STATE OF ARKANSAS ex rel. ARKAN-
SAS STATE HIGHWAY COMMIS-
SION, Plaintiff-Appellee,

v.

Neil GOLDSCHMIDT, Secretary of
Transportation of the United
States, Defendant-Appellant.

No. 80–1574.

United States Court of Appeals,
Eighth Circuit.

Submitted July 31, 1980.

Decided Aug. 4, 1980.

Rehearing Denied Aug. 25, 1980.

Michael Singer, Atty., Appellate Staff, Civil Division, Dept. of Justice, Washington, D. C., for defendant-appellant.

Chris Parker, Arkansas State Highway Commission, Little Rock, Ark., for plaintiff-appellee.

Before BRIGHT, STEPHENSON and ARNOLD, Circuit Judges.

PER CURIAM.

The State of Arkansas filed this suit to contest the allocation of federal-aid highway funds by the defendant Secretary of Transportation. The Secretary, acting pursuant to a deferral message sent to Congress by the President in April, had announced that only $7.6 billion (instead of a previously set figure of $8.75 billion) would be available for allocation in fiscal year 1980. He had also taken the position that the approximately $2.1 billion remaining to be allocated during the fiscal year would be parceled out among the States in proportion to their percentages of the previously set, and larger, statutory apportionments. This method of allocation worked to the advantage of States that had already, prior to the deferral message, secured obligations for much of their share of the funds. It worked to the disadvantage of Arkansas, which had planned to secure obligations for

several projects in the latter part of FY 1980. Obligations already obtained would not, under the Secretary's plan, be counted against a State's share of the remaining $2.1 billion.

The District Court,[1] acting promptly and with due regard for the public importance of the case, held (1) that the President lacked authority to make such a deferral under Section 1013 of the Impoundment Control Act, 31 U.S.C. § 1403, and (2) that even if the deferral were effective, the Secretary's method of allocating the remaining funds violated the Federal-Aid Highway Act, 23 U.S.C. §§ 101 *et seq.* Judgment was entered instructing the Secretary to allocate substantially more highway funds to Arkansas. The Secretary appealed.

█ The question for decision is whether this case has become moot on account of the enactment by Congress, after the entry of judgment by the District Court, of the Supplemental Appropriations and Rescission Act of 1980, P.L. No. 96–304, 94 Stat. 857, approved by the President on July 8, 1980. This question, which necessarily was not before the District Court, must be addressed here. If the case has become moot pending appeal, our jurisdiction is at an end, and we may not decide the merits of this controversy.

We begin of course with the words of the new Act of Congress. Chapter XIII of Title I of the Act provides in pertinent part as follows:

## DEPARTMENT OF TRANSPORTATION

\*     \*     \*     \*     \*     \*

### FEDERAL HIGHWAY ADMINISTRATION

\*     \*     \*     \*     \*     \*

### FEDERAL–AID HIGHWAYS

#### (LIQUIDATION OF CONTRACT AUTHORIZATION) (TRUST FUND)

For an additional amount for Federal-aid highways, $1,400,000,000, or so much as may be available in and derived from the Highway Trust Fund, to remain available until expended: *Provided,* That (a) Notwithstanding any other provision of law, the total of all obligations for Federal-aid highways and highway safety construction programs for fiscal year 1980 shall not exceed $7,800,000,000. This limitation shall not apply to obligations for emergency relief under section 125 of title 23, United States Code.

(b) For fiscal year 1980, immediately upon enactment of this Act, the Secretary of Transportation shall control the obligation of such limitation by distribution of amounts of such limitation not obligated on the date of enactment of this Act in the ratio which sums authorized to be appropriated for Federal-aid highways and highway safety construction which are apportioned or allocated to a State in fiscal year 1980 bears to the total of the sums authorized to be appropriated for Federal-aid highways and highway safety construction which are apportioned or allocated to all the States in such fiscal year, except that no State shall receive a distribution such that the total of amounts so distributed to such State and amounts obligated by such State on or before the date of enactment of this Act would exceed a distribution of such limitation made in the ratio which sums authorized to be appropriated for Federal-aid highways and highway safety construction which are apportioned or allocated to such State in fiscal year 1980 bears to the total of the sums authorized to be appropriated for Federal-aid highways and highway safety construction which are apportioned or allocated to all the States in such fiscal year and the Secretary of Transportation shall not be required to cancel any obligations incurred on or before the date of enactment of this Act.

(c) Notwithstanding subsection (b), the Secretary shall—

(1) provide all States with authority sufficient to prevent lapses of sums authorized to be appropriated for Fed-

---

1. The Honorable Garnett Thomas Eisele, Chief Judge.

eral-aid highways and highway safety construction which have been apportioned or allocated to a State, except in those instances in which a State has indicated prior to April 2, 1980, its intention to lapse sums apportioned under subsection 104(b)(5)(A), title 23, United States Code;

(2) after August 15, 1980, revise a distribution made under subsection (b) in the event a State will not obligate the amount distributed during fiscal year 1980 and redistribute sufficient amounts to those States able to obligate amounts in addition to those previously distributed during fiscal year 1980; and

(3) not distribute funds for administrative expenses and forest highways under such limitation.

(d) Notwithstanding any other provision of law, obligations authorized for carrying out the provisions of 23 U.S.C. § 125 for the fiscal year ending September 30, 1980, are increased to $350,000,-000. Such obligational authority is to remain available until September 30, 1982.

(e) The Congress disapproves the proposed deferral D80–61, relating to the Federal Highway Administration, Federal-aid highways, as set forth in the message of April 16, 1980, which was transmitted to the Congress by the President. This disapproval shall be effective upon the enactment into law of this bill.

In addition, we note the following explanatory language from the conference report to accompany H.R. 7542, 96th Cong., 2d Sess., the bill that has now become P.L. 96–304:

The conferees are aware that at least nine states have brought suits challenging the President's deferral of Federal-aid highway obligational authority as well as the method chosen by the Federal Highway Administration to allocate the remaining fiscal year 1980 obligational authority among the States. The conferees are also aware that in some of these suits, district courts have issued orders declaring the deferral and/or the allocation formula illegal and ordering the Secretary of Transportation to take certain actions. It is the intent of the conferees that this legislation, in setting a new statutory obligational ceiling for fiscal year 1980 and in providing a statutory distribution formula, act to moot all aspects of the pending litigation, including any efforts to hold the Secretary in contempt of court. The conferees believe that this is essential because of the negative impact that compliance with the terms of those orders would have upon the operation of the allocation formula established by this legislation and upon the entire Federal-aid highway program. Therefore, "amounts not obligated on the date of enactment of this Act" shall be determined on the basis of actual obligations, without regard to set-asides or other court orders.

H.R.Conf.Rep. No. 96–1149, 96th Cong., 2d Sess. 56–57 (1980).

Congress has left little room for interpretation. The new Act plainly does at least three things. (1) It disapproves the President's deferral message numbered D80–61, referred to above. The issue of the propriety of the deferral under the Impoundment Control Act, though still of legal interest, has therefore disappeared from this case for all practical purposes. (2) The Act sets a new obligational ceiling for FY 1980 of $7.8 billion for federal-aid highways and highway safety construction programs, almost as low as the $7.6 billion ceiling that would have been imposed by the deferral. And (3) the Act specifies a formula for allocation of remaining FY 1980 funds. Under this formula, each State's share of the remaining funds, in general, will be its percentage, as previously fixed, of total funds for the current fiscal year 1980. To this general rule two refinements are added: obligations already made as of the date of enactment are not disturbed, and no State will receive more than its originally fixed share of the total of $7.8 billion allocated for FY 1980.

The new Act eliminates completely both the dispute over the validity of the purport-

ed deferral, and the question as to the proper allocation of funds for the remainder of the fiscal year. Congress has authoritatively decreed what formula shall govern the Secretary of Transportation with respect to all fiscal year 1980 funds, the only funds involved in this case. If there were any ambiguity in the statute itself, the language of the conference report, which is one of the most authoritative indicia of congressional intent, would resolve it. The State argues that the statute should not be given a retroactive application, and we agree, but this construction is unavailing so far as the State's position is concerned, because no part of the funds claimed by the State of Arkansas in this case had been obligated to the State before July 8, 1980, the date of enactment of the statute. It is true that under the various orders of the District Court the Secretary of Transportation was directed to "set aside" certain funding authority so that the State's claims could be satisfied if they were ultimately upheld, but such a "set aside" is not a pre-enactment obligation as Congress has used that term. The conference report specifically so states.

The rationale of *Kremens v. Bartley*, 431 U.S. 119, 128–29, 97 S.Ct. 1709, 1714–1715, 52 L.Ed.2d 184 (1977), governs here. The new Act is a complete substitution for the law as it existed at the time of the District Court's decisions. "The fact that the Act was passed after the decision below does not save the named appellees' claims for mootness. There must be a live case or controversy before this Court, and we apply the law as it is now, not as it stood below. . . . Thus the enactment of the new statute clearly moots the claims of the named appellees . . . ." *Id.* at 128–29, 97 S.Ct. 1709, 1715 (citations and footnote omitted).

Nor can we accept the State's suggestion that this construction of the statute somehow interferes with the Article III powers of the courts. To be sure, Congress has no power of its own to decide whether a case is moot. That determination belongs to the judicial, not to the legislative power.

Congress does have power, however, to dispose of federal-aid highway funds, and to indicate, in the course of doing so, what its intentions are with respect to different categories of those funds. Whether such an exercise of power by Congress is effective to moot a pending case is, of course, a question for the courts. We hold that the new Act cuts the basis from under the controversy that the District Court decided, making it purely academic and therefore moot. If the State, pursuant to the District Court's orders, had obtained some obligations of funds before July 8, and if Congress had chosen not to recognize these obligations, a different question might be presented. Here, however, the State never obtained any vested right in the disputed funds. The District Court's holdings in its favor never ripened into an obligation, first because the District Court stayed its own order for a time, and then because this Court chose to extend the stay.

The cases cited by the State are not controlling. In *City of Los Angeles v. Adams*, 556 F.2d 40 (D.C.Cir.1977), for example, the later Act of Congress was construed not to alter substantively a prior allocation formula. *Id.* at 50–51. In *National Association of Neighborhood Centers v. Mathews*, 551 F.2d 321, 339 (D.C.Cir.1976), the case was held not to be moot in part because "the new statute, in pertinent part, appears quite similar to the old one . . . ." *Ibid.* (footnote omitted). And *National Association of Regional Councils v. Costle*, 564 F.2d 583, 588–90 (D.C.Cir.1977), emphasizes that Congress has sole power under the Constitution, Art. I, Sec. 9, Clause 7, to authorize the expenditure to public funds, and that the courts have no power to resurrect budget authority which does not exist, either because it was never provided or because it has terminated.

We conclude that Congress has exercised its undoubted authority to decide the allocation as among the States of federal-aid highway funds, and that it has done so in such a way as to eliminate entirely, for purposes of fiscal year 1980, the statutory scheme that was before the District Court.

The result is that the Secretary of Transportation's position as to mootness must be sustained.

The orders and judgment of the District Court are vacated, and this cause is remanded to that Court with directions to dismiss the complaint as moot.