**STATE OF VERMONT by its Agency of Transportation, Plaintiff–Appellee,**

v.

**Neil GOLDSCHMIDT, Secretary of Transportation of the United States, Defendant–Appellant.**

**No. 1544, Docket 80–6112.**

United States Court of Appeals, Second Circuit.

Argued July 24, 1980.

Decided Nov. 12, 1980.

Mary A. McReynolds, Washington, D.C. (Robert E. Kopp, Anthony J. Steinmeyer, and Michael Jay Singer, Attys., Civ. Div., Dept. of Justice, and Alice Daniel, Asst. Atty. Gen., Washington, D.C., William B. Gray, U. S. Atty., Rutland, Vt., of counsel, Gregory Wolfe, Dept. of Transportation, Washington, D.C., on brief), for defendant–appellant.

Michael R. Gadue, Asst. Atty. Gen., Chief, Civil Litigation Div., Montpelier, Vt. (Robert C. Schwartz, Asst. Atty. Gen., Chief, Transportation Div., Montpelier, Vt., on brief), for plaintiff–appellee.

Before VAN GRAAFEILAND and NEWMAN, Circuit Judges, and NEAHER, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

The objective of the Federal–Aid Highway Act, 23 U.S.C. §§ 101–36, is to bring about an improvement in the nation's highway system by providing federal financial aid for state highway construction. This action concerns the manner in which financial aid for the 1980 fiscal year was allocated among the states.

Each fiscal year, Congress authorizes an appropriation for the highway program which the Secretary of Transportation apportions among the states according to a statutory formula. 23 U.S.C. § 104. A state's allotment, when combined with its carry–over allotments from previous years, represents the ceiling on that state's federal–aid highway expenditures for the then current year. Before a state can use any of its funds, however, it must get approval of proposed highway projects from the Federal Highway Administration (FHWA). Approval of a project by FHWA creates a contractual obligation by the federal government to reimburse the state for the government's proportionate share of the project's cost, calculated according to another statutory formula. See 23 U.S.C. § 120.

In recent years, Congress has limited the overall amount that FHWA can obligate itself to pay for new projects submitted during the fiscal year, which limit has been lower than the total authorized appropriation. If this overall obligational limit is reached before a state has used up all of its apportioned funds, no project thereafter proposed by that state will be approved during the balance of the fiscal year. It follows from this that the earlier a state can submit a proposed project to FHWA in any fiscal year, the more likely it is that the project will be approved before FHWA's obligational authority is exhausted. With this background in mind, we turn to the issues presented on this appeal.

At the start of the 1980 fiscal year, October 1, 1979, Congress authorized an appropriation of $7.9 billion.[1] Carry–overs from previous years increased the total money available under the program to $13.6 billion. However, Congress set FHWA's 1980 obligational ceiling at $8.75 billion. In April 1980, this ceiling was lowered to $7.6 billion because of a budget deferral proposed by the President. See 31 U.S.C. § 1403. Although the 1980 fiscal year was then only half over, $5.5 billion of this amount had already been obligated. Unless some plan other than first come, first served was adopted, it appeared likely that those states which were able to expedite the submission of proposed highway projects would ex-

---

* Hon. Edward R. Neaher, District Judge of the Eastern District of New York, sitting by designation.

1. For purposes of this opinion, round number figures are used.

haust the balance before the slower moving states were able to act. The Secretary created a plan. It provided in substance that the $2.1 billion unobligated balance would be allocated among the states according to the appropriation apportionment formula contained in 23 U.S.C. § 104. This lawsuit, brought in the United States District Court for the District of Vermont, challenged the adoption of that plan.

Vermont alleged that its apportioned share of the 1980 authorization was $44 million. In addition, Vermont had a carry—over from previous years of $23 million. Prior to April 1980, FHWA had approved Vermont projects and obligated the government for a total of $8 million. Under the Secretary's plan, Vermont was allocated another $13 million of obligational authority. The $21 million of government obligation thus used or available to Vermont approximated only thirty-one percent of its apportioned authorization. It is undisputed that some other states would receive much higher percentages. Vermont alleged that the Secretary's plan violated the Act and denied Vermont citizens due process.

On May 19, 1980, District Judge Coffrin granted Vermont "a preliminary injunction against the Secretary's imposition of a prospective limit on Vermont's *obligational authority* other than the limit represented by Vermont's total *apportionments*." (Emphasis in original). During the ensuing month, projects submitted by Vermont were obligated until the total approximated the amount that could have been obligated under the Secretary's plan. When this point was reached, additional projects approximating $5 million in value were not processed by FHWA.

When this was brought to the attention of Judge Coffrin by appropriate motion, Judge Coffrin modified his May 19th order. The amended order, dated June 12, 1980, required FHWA to "preserve and have available for immediate obligation the sum of obligational authority in the plaintiff's

account equal to the full amount of the plaintiff's current unobligated apportionment balance" and to "administratively process the completion of projects submitted by plaintiff, provided that no budget authority need be obligated until further Order of the [District] Court."

Both parties then moved for summary judgment, and, by order dated June 20, 1980, the district court granted plaintiff's motion. The summary judgment order provided that the May 19 preliminary injunction order as modified by the June 12 order should remain in effect until June 25, 1980,[2] at which time, unless further extended by order of this Court, it should be vacated and without further force and effect. The summary judgment order provided further that, upon the vacation of the June 12 order, the preliminary injunction order of May 19 would become the district court's permanent injunction order and defendant would thereby be "enjoined against imposing a prospective limit on Vermont's *obligational authority* other than the limit represented by Vermont's total apportionment as discussed in the court's Opinion filed May 19, 1980." By order dated July 3, 1980, this Court granted the government's motion for a stay.

On July 8, 1980, the President approved the Supplemental Appropriations and Reissue Act of 1980, Pub.L.No. 96–304, 94 Stat. 857, which created a statutory formula for the allocation of unobligated funds similar to the one that had been proposed by the Secretary. This statute by its terms was to control the obligation of funds "not obligated on the date of enactment of this Act"; the Secretary was not "required to cancel any obligations incurred on or before [July 8, 1980]". 94 Stat. at 903. Two other circuits have already held that all funds not obligated prior to July 8, 1980 must be allocated in accordance with the provisions of the Supplemental Act. *New Mexico v. Goldschmidt*, 629 F.2d 665 (10th Cir. 1980); *Arkansas v. Goldschmidt*, 627 F.2d 839 (8th Cir. 1980). We agree.

---

**2.** This date was subsequently changed to June 27, 1980, on which day FHWA's motion for a

stay was heard in this Court.

Vermont contends that, because of the district court's injunction orders, the $5 million in projects submitted by it prior to July 8, 1980 were obligated and therefore excluded from the allocation formula of the Supplemental Appropriations and Reissue Act. We disagree. The district court's final order and judgment did no more than prohibit FHWA from imposing the Secretary's proposed limitation on Vermont's obligational authority. They did not require FHWA to rubber–stamp its approval of every project that Vermont submitted. Because Vermont did not establish its entitlement to FHWA approval of specific plans, specifications, and estimates, *i.e.*, PS&E Approval, Judge Coffrin was hardly in a position to order FHWA to enter into binding contracts of reimbursement. *See Monroe County Conservation Counsel, Inc. v. Volpe*, 472 F.2d 693, 699 (2d Cir. 1972); *Essex County Preservation Ass'n v. Campbell*, 536 F.2d 956, 961–62 (1st Cir. 1976). We do not believe that he did. At least, covenants of reimbursement were not mandated by him with the "specificity and definiteness" required of an injunctive decree. *See Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108, 1111 (2d Cir. 1980); *H. K. Porter Co. v. National Friction Products Corp.*, 568 F.2d 24, 26–28 (7th Cir. 1978).

Assuming for the argument that the district court's final order and judgment did create a definite and enforceable duty to obligate, their operation was stayed by the order of this Court. The government's motion for a stay was timely; it was argued before this Court on Friday, June 27. Our order, entered on July 3, was not intended to be a futile act. *See Griffin v. County School Board*, 363 F.2d 206, 210–12 (4th Cir.), *cert. denied*, 385 U.S. 960, 87 S.Ct. 395, 17 L.Ed.2d 305 (1966). If the district court's judgment could be construed to mandate the obligating of identifiable Vermont projects, all parties and this Court considered that its operation was stayed until the Court had a reasonable opportunity to decide the government's motion. If counsel for Vermont was of another mind, this should have been disclosed to the Court at the time of argument.

We conclude that the $5 million in proposed projects which are the basis of Vermont's claim were not obligated prior to the enactment of the Supplemental Appropriations and Reissue Act of 1980 and are therefore not excepted from the operation of the Act. This moots Vermont's claim which is based upon legislation that the Act has supplanted. *See Kremens v. Bartley*, 431 U.S. 119, 128–29, 97 S.Ct. 1709, 1714–15, 52 L.Ed.2d 184 (1977).

The final order and judgment of the district court are vacated, and this cause is remanded to the district court with instructions to dismiss the complaint as moot.

NEWMAN, Circuit Judge, concurring in the result:

Vermont claims entitlement to $5 million, and the Secretary of Transportation opposes this claim. Vermont says this sum has been, in effect, obligated prior to July 8, 1980 by virtue of the prior rulings of the District Court and that such "obligated" funds should be available to it since the Supplemental Appropriations and Reissue Act of 1980, Pub.L.No. 96–304, 94 Stat. 857, leaves unaffected funds obligated prior to that date. The Court adjudicates this controversy on the merits by ruling against Vermont's claim. I agree with all of the Court's reasoning, except the final conclusion that Vermont's claim is moot. To the extent that Vermont's claim is rooted not only in the District Court's prior rulings but also in the prior statute, the enactment of the new statute does not moot the claim, it defeats it on its merits.

This situation is unlike *Kremens v. Bartley*, 431 U.S. 119, 128–29, 97 S.Ct. 1709, 1714–15, 52 L.Ed.2d 184 (1977), on which the Court relies for its conclusion about mootness. In *Bartley* the newly enacted legislation mooted the claim of one class of plaintiffs because it gave them the relief they were seeking. As to that relief, the defendant, governed by the new legislation, was no longer opposing plaintiffs' claim. That made the claim of that plaintiff class moot. Here the defendant continues to op-

pose the plaintiff's claim and persuades all members of this panel that he is correct on the merits. When that happens, he is entitled to a judgment rejecting plaintiff's claim on the merits.