864 F.2d 604
 Dwight COLEMAN, Lester Crowsheart, Sharon Crowsheart,
Russell Folmer, Anna Mae Folmer, George Hatfield, June
Hatfield, Donna McCabe, Diane McCabe, on behalf of
themselves and others similarly situated; Gary A. Barrett,
Rosemary K. Barrett, Richard L. Harmon, Betty J. Harmon,
Larry L. Robertson, Nancy K. Robertson, Ross Wade, and
Maureen Wade, Appellees/Cross-Appellants,
v.
Richard E. LYNG, Secretary of Agriculture, Charles W.
Shuman, Administrator of the Farmers Home Administration,
Ralph W. Leet, State Director of the Farmers Home
Administration, Harold T. Aasmundstad, Glen W. Binegar,
Allen G. Drege, Dennis W. Larson, Odell O. Ottmar and Joseph
J. Schneider, as District Directors of the Farmers Home
Administration of North Dakota and Samuel Delvo, Lorace
Hakanson, Larry Leier, Charles Schaefer and James Well, as
County Supervisors of the Farmers Home Administration in
North Dakota, Appellants/Cross-Appellees.
 Nos. 87-5477, 88-5003.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 19, 1988.
Decided Dec. 28, 1988.
Rehearing Denied Feb. 1, 1989.
 
 Howard S. Scher, Washington, D.C., for appellants/cross-appellees.
 Lynn A. Hayes, St. Paul, Minn., for appellees/cross-appellants.
 Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 In this case, a nationwide class of borrowers from the Farmers Home Administration (FmHA) challenged the validity of certain FmHA loan servicing policies on statutory and constitutional grounds. The District Court dismissed all but one of the farmers' fourteen claims for relief, and awarded partial relief to members of certain subgroups of the plaintiff class on the remaining claim. Both sides appeal. After the entry of the District Court's order, Congress enacted the Agricultural Credit Act of 1987, P.L. No. 100-233, 101 Stat. 1568, a statute which provides more relief to the plaintiffs than the remedy ordered by the District Court. We hold that the passage of the Agricultural Credit Act moots both the government's appeal and the farmers' cross-appeal. Accordingly, we vacate the judgment of the District Court and remand with instructions to dismiss.
 
 I.
 
 2
 This litigation began in March 1983, when several North Dakota farmers filed suit on behalf of a state-wide class of FmHA borrowers challenging the FmHA's farm loan liquidation and foreclosure procedures. The complaint alleged that these procedures failed to include provisions for loan deferral as mandated by 7 U.S.C. Sec. 1981a, and violated the plaintiff's Fifth Amendment right to due process. The District Court subsequently certified the class and granted preliminary relief. Coleman v. Block, 562 F.Supp. 1353 (D.N.D.1983). The Court later granted the plaintiffs' motion to expand the class to a nationwide class. Coleman v. Block, 100 F.R.D. 705 (D.N.D.1983), and extended the preliminary relief to the nationwide class. Coleman v. Block, 580 F.Supp. 192 (D.N.D.1983). Following a three-day trial on the merits, the District Court issued a permanent injunction prohibiting FmHA from accelerating borrowers' loans, foreclosing on borrowers' collateral property, or liquidating the living and operating allowance from sale proceeds of crops and livestock offered as collateral for FmHA loans, unless the FmHA provided 30 days' written notice of the action with reasons for the action, a right to an appeal, and an opportunity to establish eligibility for loan deferral under 7 U.S.C. Sec. 1981a. Coleman v. Block, 580 F.Supp. 194, 210-11 (D.N.D.1984).
 
 
 3
 This appeal concerns the validity of the FmHA's response to the District Court's 1983-84 orders. After the District Court granted the preliminary injunction, the FmHA prepared a set of documents known as the "pretermination package" for use in taking adverse action against borrowers. The pretermination package replaced the previous set of forms (which the District Court had found defective) as of November 14, 1983, and remained in use until October 19, 1984. At that time, the FmHA introduced still another set of forms, designated as forms FmHA 1924-14, 1924-25, and 1924-26,[1] which superseded the pretermination package. These three documents, sent to delinquent FmHA borrowers in advance of loan acceleration, reflected new regulations governing FmHA loan servicing published on November 30, 1984 at 49 Fed.Reg. 47,007 and promulgated in final form on November 1, 1985 at 50 Fed.Reg. 45,740.
 
 
 4
 On November 29, 1985, the plaintiffs filed a supplemental complaint[2] which raised fourteen claims for relief, challenging both the pretermination package and the superseding 1924 series of FmHA forms under the Administrative Procedure Act, 5 U.S.C. Secs. 551-706, and the Due Process Clause. Ten of these claims have been resolved or dismissed by the District Court without appeal.[3] Three of them have lost practical significance.[4] Only the tenth claim for relief, and the scope of the remedy ordered for this claim, are at issue in this appeal.
 
 II.
 
 5
 The tenth claim for relief alleges that forms FmHA 1924-14, 1924-25, and especially 1924-26 deprive FmHA borrowers of property without due process of law. (The property right involved, according to plaintiffs' theory, is the right, created by statute, to be considered for various alternatives to foreclosure.) These documents are the first materials the FmHA sends to borrowers who are behind in their loan repayments, and whose loans may be accelerated. Form FmHA 1924-25, "Notice of Intent to Take Adverse Action," informs the borrower that his or her account is delinquent, or that the borrower has otherwise violated the FmHA loan agreement. Form 1924-25 notifies the borrower of the opportunity to appeal the intended adverse action, and indicates the availability of servicing options provided by statute. Form FmHA 1924-14 describes these options, which include various types of loan deferral, and refinancing. The borrower has thirty days after receipt of this notice to complete Form FmHA 1924-26, "Borrower Acknowledgment of Notice to Take Adverse Action." Form FmHA 1924-26 requires the borrower to choose one of four possible courses in response to the intended adverse action:
 
 
 6
 (1) The borrower may apply for one or more of the seven loan servicing actions listed in Form 1924-25;
 
 
 7
 (2) The borrower may appeal the intended adverse action to an FmHA hearing officer;(3) The borrower may elect to cure the default by paying the delinquent account or making restitution for any unauthorized disposition of security; or
 
 
 8
 (4) The borrower may elect to liquidate the account by selling or transferring the secured assets.
 
 
 9
 These three FmHA forms are the first step in a process that often culminates in the foreclosure of the mortgage on the farmer's land, and the liquidation of all crops, livestock, and equipment which have secured the defaulted FmHA loan.
 
 
 10
 The farmers' tenth claim for relief incorporates several grievances concerning the clarity and completeness of the 1924 series of forms. The farmers allege that these forms are unreadable, and that they misrepresent or fail to mention important features of loan servicing options under Sec. 1981a. In effect, the farmers argue, the FmHA forms deprived borrowers of their statutory rights throughout the foreclosure and acceleration process. The District Court rejected the farmers' criticisms of the wording and thoroughness of the notice forms, observing that the improvements that the farmers sought would only make the forms longer and more difficult to understand. See Coleman v. Block, 663 F.Supp. 1315, 1331-32 (D.N.D.1987). The Court found that the FmHA's general scheme, in which the forms would provide borrowers with general notice of their options and direct them to the county FmHA offices for a more thorough explanation, was "a constitutionally permissible, and even preferable, alternative." Id. at 1332.
 
 
 11
 The District Court found, however, that this system of notice, though sound in principle, failed in practice because county FmHA agents were unprepared to provide the information borrowers requested. According to the plaintiffs' uncontradicted evidence, county agents for the FmHA provided "inadequate or misleading information, or no information at all" to borrowers seeking further explanation of their options listed in the 1924 series of forms. Id. at 1332. The District Court concluded that the inability of the county FmHA agencies to explain the available alternatives to loan acceleration under Sec. 1981a constituted a denial of notice and a violation of the farmers' rights to due process. Id. at 1332-33.
 
 
 12
 The District Court also found an arbitrary deprivation of a protected property right in one element of Form FmHA 1924-26. That form directs delinquent borrowers to choose one, and only one, of four available liquidation options, in spite of the fact that a single Notice of Adverse Action may be used to cover more than one kind of loan. The District Court reasoned that FmHA borrowers are entitled to make a separate election of liquidation options for each loan and each reason for the proposed adverse action, and concluded that Form 1924-26 deprived borrowers of this entitlement to a mix of options by limiting them to a single choice. Id. at 1333. As a remedy for these asserted constitutional deficiencies, the District Court ordered the FmHA to amend Form 1924-26 by including a prominent statement that explanations of the various options available to borrowers would be available at county FmHA offices. The FmHA was further required to prepare a comprehensive packet of information explaining the requirements, terms, restrictions, and benefits of each option for dissemination to county FmHA agents. Finally, the District Court ordered the FmHA "to amend form FmHA 1924-26 to allow borrowers a separate election of options for each loan accelerated and for each reason given for each proposed action." Id.
 
 
 13
 In this order, which was entered on May 7, 1987, the District Court declined to grant any relief to borrowers whose loans had already been accelerated through the use of form 1924-26. The Court reconsidered this decision in a supplemental order of June 2, 1987, in which it concluded that at least some borrowers already affected were entitled to have their loan accelerations reversed. The Court divided the plaintiff class into three groups for purposes of relief. Farmers who had received the faulty notice forms, but whose loans had not yet been accelerated as of the date of the Court's May 7th order, constituted the first group. The Court enjoined the FmHA from accelerating the loans of any farmer in this group without first providing a corrected set of forms and the information services at county FmHA offices required by the May 7th order. For any farmer whose loan had been accelerated between May 7, 1987 and the date of the supplemental order, the Court ordered the FmHA to reverse the acceleration and extend the same relief available to other farmers in the first group. Id. at 1342. The Court noted that this group included about 65,000 FmHA borrowers. Id. at 1340.
 
 
 14
 The second group, numbering about 13,000 borrowers, consisted of farmers receiving the deficient forms whose loans had already been accelerated prior to the May 7, 1987 order, but who still held title to their collateral property. The Court concluded that "[t]he price of a blanket reversal of acceleration is too high to pay" for this group, id. at 1342, and so limited the remedy for these farmers to an injunction preventing the FmHA from proceeding with any foreclosure on collateral property until thirty days after the corrected notice forms and explanations became available in county FmHA offices. According to the Court, this remedy would enable borrowers to learn whether they had actually been denied beneficial options by the operation of Form 1924-26, and if so, to pursue individual actions for recovery. Id. The Court specifically denied the plaintiffs' request for reversal of these farmers' loan accelerations, restoration of releases of security for farm operating and living expenses, and prohibition of confiscation of payments under other government programs to offset indebtedness to the FmHA. Id.
 
 
 15
 The third group, numbering about 1,000 borrowers, consisted of farmers who had received the deficient forms and had already lost title to their collateral property. The Court concluded that for this group "[t]he inequitable results of [retroactive] relief would ... outweigh the benefits," and decided not to "reopen the wounds of those individuals for whom the legal process has been completed." Id. at 1341. While it noted that these farmers were free to seek any actual damages resulting from the defective FmHA notice in their local courts, the Court denied any relief to the third group for purposes of this class action.
 
 III.
 
 16
 The FmHA appeals, contending that Form 1924-26 does not deprive borrowers of property without due process. The FmHA argues that Form 1924-26 does not affect any private right protected by the Fifth Amendment, and that even if it does, the form does not deprive borrowers of any such rights without due process under Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
 
 
 17
 The farmers cross-appeal, arguing that the District Court failed to provide enough relief to the second group of borrowers (those farmers whose loans had already been accelerated, but who had not yet lost title to their property). According to the farmers, an appropriate remedy for the second group would have (1) enjoined the FmHA from any future seizure of farm-production income or government payments which would have been released for living and operating expenses prior to acceleration, and (2) ordered the FmHA to provide these farmers with timely notice that new information on servicing options was available at county FmHA offices. The farmers claim that the unconstitutional deprivation which borrowers in the second group sustained cannot be adequately remedied by the limited relief granted below, and so they urge us to reverse the District Court's denial of a broader remedy as an abuse of discretion.
 
 IV.
 
 18
 During the pendency of this appeal, the Agricultural Credit Act of 1987, Pub.L. No. 100-233, 101 Stat. 1568 (1988), was signed into law. Title VI of the Act, Secs. 601-626, titled "Farmers Home Administration Loans," makes extensive changes in the statutory provisions which form the background for this litigation. The Senate Committee report on Title VI of the Act specifically explains that "[t]hese provisions are intended to carry out the intent of the Coleman decisions in the context of this reform of FmHA practices." S.Rep. No. 100-230, 100th Cong., 1st Sess. 6 (1987).
 
 
 19
 The Act requires the Secretary of Agriculture to
 
 
 20
 provide notice by certified mail to each borrower who is at least 180 days delinquent in the payment of principal or interest on a loan made or insured under this title.
 
 
 21
 P.L. No. 100-233, Sec. 605 (adding Sec. 331D(a) to Subtitle D of the Consolidated Farm and Rural Development Act (CFRDA), 7 U.S.C. Sec. 1981 et seq.). This notice must
 
 
 22
 (1) include a summary of all primary loan service programs, preservation loan service programs, and appeal procedures, including the eligibility criteria, and terms and conditions of such programs and procedures;
 
 
 23
 (2) include a summary of the manner in which the borrower may apply, and be considered, for all such programs, except that the Secretary shall not require the borrower to select among such programs or waive any right in order to be considered for any program carried out by the Secretary;
 
 
 24
 (3) advise the borrower regarding all filing requirements and any deadlines that must be met for requesting loan servicing;
 
 
 25
 (4) provide any relevant forms, including applicable response forms;
 
 
 26
 (5) advise the borrower that a copy of regulations is available on request; and
 
 
 27
 (6) be designed to be readable and understandable by the borrower.
 
 
 28
 P.L. No. 100-233, Sec. 605 (adding Sec. 331D(b) to Subtitle D of the CFRDA). The Act further requires that this notice shall be provided:
 
 
 29
 (1) at the time an application is made for participation in a loan service program;
 
 
 30
 (2) on written request of the borrower; and
 
 
 31
 (3) before the earliest of--
 
 
 32
 (A) initiating any liquidation;
 
 
 33
 (B) requesting the conveyance of security property;
 
 
 34
 (C) accelerating the loan;
 
 
 35
 (D) respossessing property;
 
 
 36
 (E) foreclosing on property; or
 
 
 37
 (F) taking any other collection action.
 
 
 38
 P.L. No. 100-233, Sec. 605 (adding Sec. 331D(d) to Subtitle D of the CFRDA). Furthermore, the Act prohibits the Secretary from "initiat[ing] any acceleration, foreclosure, or liquidation in connection with any delinquent farmer program loan before the date the Secretary has issued final regulations to carry out the amendments made by this section." P.L. No. 100-233, Sec. 615(d).
 
 
 39
 The Act also provides benefits for farmers whose loans had been accelerated between the introduction of Form 1924-26 and the May 7th, 1987 injunction of the District Court. Like all other borrowers who are over 180 days delinquent in their loan repayment, these farmers are entitled to the Notice of Loan Service Programs required by new Sec. 331D(a) (added by Sec. 605 of the Act). The Act also makes a special provision for the release of income derived from sales of secured crops and chattels for farmers whose loans had been accelerated between November 1, 1985 and May 7, 1987. Any borrower in the District Court's second group
 
 
 40
 whose account was accelerated on or after November 1, 1985, and on or before May 7, 1987, but not thereafter foreclosed on or liquidated, shall be entitled to the release of security income for a period of 12 months, to pay the essential household and farm operating expenses of such borrower in an amount not to exceed $18,000 over 12 months
 
 
 41
 as long as the borrower is still farming and requests restructuring of the debt. P.L. No. 100-233, Sec. 611 (adding Sec. 335(f)(3) to Subtitle D of the CFRDA).
 
 V.
 
 42
 The FmHA tacitly concedes that the Agricultural Credit Act renders its appeal moot. Congress has now required the FmHA to do everything the District Court ordered on constitutional grounds. Under the new Sec. 331D(b) of the CFRDA (added by Sec. 605 of the 1987 Act), each borrower threatened with adverse action must receive a readable summary description of all available loan servicing programs. Section 331D(b) also provides that "the Secretary shall not require the borrower to select among such programs or waive any right in order to be considered for any [FmHA] program," a provision which duplicates the District Court's order that Form 1924-26 be amended to allow a separate election of options. The Act further directs the Secretary to suspend all acceleration, liquidation, and foreclosure until the new notice requirements created by the Act are carried out, a provision which has the same effect as the District Court's June 2nd injunction. Even if the FmHA were to prevail on all issues on its appeal, the 1987 Act would still impose the same obligations ordered by the District Court. The FmHA's appeal is therefore moot.
 
 
 43
 The farmers' cross-appeal presents a more difficult problem. For the first group of borrowers (whose loans had not yet been accelerated as of May 7, 1987), the Act mandates as much relief as the plaintiffs claim.[5] For the second group of borrowers whose loans had already been accelerated before May 7, 1987, but who still retain title to their property, the Act mandates more relief than the District Court actually ordered, but less than the plaintiffs claim they were entitled to receive. The Act entitles these borrowers to adequate notice of loan servicing options, an opportunity to reprocess their applications for loan servicing, and a moratorium on foreclosure actions until final regulations are in place--a remedy which exceeds that ordered by the District Court, compare 663 F.Supp. at 1342. In addition, Sec. 611 of the Act provides for the release of up to $18,000 of security income over twelve months to pay the essential household and farm operating expenses of borrowers in the second group. This last provision of the Act grants accelerated borrowers the release of security income which the District Court declined to order, but the Act's imposition of a one-year, $18,000 limit significantly restricts this relief.
 
 
 44
 As a result, the farmers argue that a live controversy remains in this case even after the passage of the Act. Their complaint alleges that
 
 
 45
 [a]ny liquidation, acceleration, foreclosure, denial of income, appeal waiver or other adverse action initiated by or resulting from the [FmHA 1924 series of forms] will deny to plaintiffs and class members due process of law guaranteed them under the Fifth Amendment to the United States Constitution.
 
 
 46
 First Amended Supplemental Class Action Complaint, Tenth Claim for Relief, Sec. 113. According to the farmers, any denial of security-income release that resulted from a loan acceleration in which Form FmHA 1924-26 was used was an unconstitutional deprivation of property. For any borrower, the security income released might well have exceeded $18,000 per year, and lasted more than twelve months.[6] The farmers conclude that they are entitled to a remedy for the FmHA's unconstitutional deprivation which exceeds the limited relief granted by the Act. The farmers therefore urge us to consider their cross-appeal on the merits, and to reverse the District Court's denial of retroactive relief.
 
 
 47
 The farmers proceed on the incorrect assumption that Congress intended its reform of FmHA practices to operate separately from the federal courts' adjudication of claims arising during the period preceding the Act. The legislative history of the Act repeatedly confirms that Title VI of the Act "... is based on careful analysis of the Coleman opinions and is designed to address, for the future, the notice issues raised in that case." S.Rep. No. 100-230, 100th Cong., 1st Sess. 38. In particular, the Senate Committee report on the bill makes it absolutely clear that the income release provisions of Sec. 611 constitute an additional form of relief for the borrowers in the second group before the District Court:
 
 
 48
 Title VI also provides certain farmers with "income releases".... Farmers who remain on the farm, whose FmHA loans were [accelerated] between November 1, 1985 and May 7, 1987 (farmers affected by the Coleman v. Lyng court decisions), shall be entitled to 12 months of income release for household and operating expenses (not in excess of $18,000 per year per borrower) if the borrower timely applies for loan restructuring.
 
 Id. at 5-6. The report stresses that
 
 49
 [t]hese [income release] provisions are intended to carry out the intent of the Coleman decisions in the context of this reform of FmHA practices.
 
 
 50
 Id. at 6. Congress's obvious intent was that the 1987 Act would function as a legislative enactment of the remedy for the grievances presented in this case.
 
 
 51
 We lack the power to add to or subtract from the remedy enacted by Congress. This is true, not because Congress can determine how particular cases before the courts are decided, but because the actual source of any relief in this case is necessarily the statutory provision for agricultural credit which Congress amended in the 1987 Act. Congress is free to alter such a system of entitlements during the pendency of a case, and when it does so, the reviewing court must "apply the law as it is now, not as it stood below." Kremens v. Bartley, 431 U.S. 119, 129, 97 S.Ct. 1709, 1715, 52 L.Ed.2d 184 (1977).
 
 
 52
 As the law stands now, borrowers whose loans were accelerated before May 7, 1987 are entitled to no more than $18,000 of income release over twelve months. If the farmers are correct on the merits of their cross-appeal, these borrowers might have been entitled to a greater amount under the law as it existed when the District Court ruled. Congress, however, can change the statutory rights of litigants, even where this change may retroactively eliminate an initially meritorious claim, except where the new statute itself is for some reason unconstitutional. Congress may, for example, retroactively change the formula for allocating federal highway funds, and this change in law may effectively moot a lawsuit brought under prior law governing that year's allocation of funds. See State of Arkansas v. Goldschmidt, 627 F.2d 839 (8th Cir.1980) (per curiam). Congress may retroactively amend the Fair Labor Standards Act to exempt state and local governments from liability under the Act for six months prior to the amendment's passage, even though this retroactive change extinguishes a claim brought under the FLSA before the passage of the amendment. See Austin v. City of Bisbee, 855 F.2d 1429 (9th Cir.1988). Congress's intent to resolve this dispute by changing the law is at least as clear as it was in Goldschmidt and Austin. We conclude that the 1987 Act's retroactive effect precludes the farmers' chance for greater relief on their cross-appeal.
 
 
 53
 It is true that the District Court decided this case on the basis of the Due Process Clause, a provision which is beyond the reach of Congress's legislative power. However, the alleged property right which the farmers sought to vindicate against unconstitutional deprivation is itself entirely a creation of statute. "Property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source [of law] that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In particular, it is only a statute that entitles an FmHA borrower to a release of income from the sale of secured crops: Nothing in the Constitution itself guarantees farmers such a security income release. Although plaintiffs might obtain injunctive relief ordering the provision of statutory benefits denied without due process, courts have no further remedial power when Congress validly amends the statute authorizing benefits.[7] See, e.g., Jones v. Reagan, 748 F.2d 1331, 1338-39 (9th Cir.1984), cert. denied, 472 U.S. 1029, 105 S.Ct. 3505, 87 L.Ed.2d 636 (1985).
 
 
 54
 As a result, the farmers cannot make out a constitutional claim that survives the passage of the 1987 Act, unless they can show that the 1987 Act is itself unconstitutional by, e.g., retroactively depriving them of their income-release rights without due process. The farmers have not attempted to make such an argument. The retroactive application of the 1987 Act to the farmers' income-release claims is justified by the need to allocate FmHA resources fairly, and this is definitely the kind of "rational legislative purpose" which passes the constitutional test for retroactive legislation. Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d 601 (1984).
 
 
 55
 In the aftermath of the Agricultural Credit Act of 1987, the parties' appeals from the District Court's orders no longer present a live case or controversy for adjudication. The orders and judgment of the District Court are vacated, and the case is remanded to that Court with directions to dismiss the complaint as moot.
 
 
 56
 It is so ordered.
 
 
 
 [1]
 These forms bore the following captions:
 Form FmHA 1924-25, "Notice of Intent to take Adverse Action";
 Form FmHA 1924-26, "Borrower Acknowledgement of Notice of Intent to Take Adverse Action";
 Form FmHA 1924-14, "Notice--Farmer Program Borrower Servicing Options Including Deferrals and Borrower Responsibilities."
 Each form is reproduced in an appendix to the District Court's opinion, Coleman v. Block, 663 F.Supp. 1315, 1334-38 (D.N.D.1987).
 
 
 [2]
 The original supplemental complaint was amended with leave of the Court, and the final form of the pleading for purposes of this appeal is the First Amended Supplemental Class Action Complaint, filed on February 3, 1986
 
 
 [3]
 The District Court dismissed claims one through five, eight, nine, and eleven with prejudice, Coleman v. Block, 663 F.Supp. 1315, 1333 (D.N.D.1987), and the plaintiffs have not appealed. Claim six was apparently settled before trial. Id. at 1319-20. Claim seven involved a procedural error in the publication of an FmHA regulation which was apparently remedied before the close of the District Court proceedings. Id. at 1333
 
 
 [4]
 Claims twelve through fourteen involve farmers whose loans had been accelerated after they received the pretermination package. The District Court dismissed these claims on the basis of laches, holding that the plaintiffs had unreasonably delayed filing their challenge to the use of the pretermination package. Id. at 1328-29. The plaintiffs did appeal the District Court's application of laches to these three claims, and briefed the issue as part of their cross-appeal. At oral argument, however, plaintiffs' counsel conceded that almost all borrowers whose loans were accelerated through use of the pretermination package had already lost title to the property which secured their loans. The District Court denied relief for that subclass of borrowers who had already lost title to their property, id. at 1341-42, and the plaintiffs do not appeal this aspect of the District Court's order. As a result, virtually all of the farmers who might have been entitled to relief on claims twelve through fourteen are now beyond any meaningful opportunity for relief, as the plaintiffs themselves concede. If any farmers whose loans were accelerated by use of the pretermination package still retain title to their property, their position and claims for relief for purposes of this appeal will be identical to those of the second group of farmers, discussed infra at 608
 
 
 [5]
 The farmers' only argument against declaring the first group's claims moot is that, by vacating the District Court's orders, this Court would be denying the farmers the chance to challenge the FmHA's new notice forms to ensure compliance with the May 7, 1987 injunction. This concern is unwarranted. The farmers can always challenge any shortcomings in the FmHA's new regulations and notice forms by filing a new lawsuit. The terms of the May 7, 1987 injunction would no longer be important in such a proceeding, since Title VI of the 1987 Act would provide a more extensive and more concrete basis for any claim for relief on these grounds. Of course, future litigants are also free to pursue constitutional challenges similar to those raised in this case. However, the possibility that FmHA acceleration procedures may be challenged on constitutional grounds at some point in the future does not justify burdening the District Court with perpetual jurisdiction over a controversy that is currently moot
 
 
 [6]
 The operating years in which this security income would have been needed are now past. The farmers claim, however, that the denial of income releases forced them to take other measures, like incurring further indebtedness, in order to pay expenses. The farmers argue that these effects of past denials are still capable of remedy by means of income release beyond the limits imposed by the new Act
 
 
 [7]
 This principle applies even if we cast the farmers' cross-appeal as a claim for money damages against FmHA officials on the constitutional-tort theory of Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Where Congress creates a remedial scheme to address the administration of federal benefit programs, the Courts will not authorize the creation of a Bivens remedy, unless Congress was unaware that its action might affect constitutional claims, which is certainly not the case here. See Schweiker v. Chilicky, --- U.S. ----, 108 S.Ct. 2460, 2468, 101 L.Ed.2d 370 (1988)