**Gregory WIEWECK and Joyce Wieweck, Appellants,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Farmers Home Administration, Appellees.**

**No. 90–5090MN.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1990.

Decided April 15, 1991.

---

Roger C. Grugel, St. Cloud, Minn., for appellants.

Patricia R. Cangemi, Minneapolis, Minn., for appellees.

Before ARNOLD and MAGILL, Circuit Judges, and BENSON,* Senior District Judge.

MAGILL, Circuit Judge.

Gregory and Joyce Wieweck appeal the district court's refusal to order the Farmers Home Administration (FmHA) to release living and operating expenses to them from the proceeds of the sale of crops in which the FmHA held a security interest. The Wiewecks argue that the district court's interpretation of the Minnesota Farmer–Lender Mediation Act was erroneous. We affirm in part and reverse in part.

## I.

In 1985, the Wiewecks took out two loans from the FmHA. The loan agreements gave the FmHA a security interest in the Wiewecks' 1985 crops and in some of their farm machinery. Because of adverse eco-

---

* The Honorable Paul Benson, Senior United States District Judge for the District of North Dakota, sitting by designation.

nomic conditions, the Wiewecks were unable to keep up with the payments on their loans. In September 1986, the FmHA notified the Wiewecks that it was accelerating the loans and that the entire balance was due immediately. The Wiewecks were unable to pay off the loans, but the FmHA nevertheless could not foreclose on the collateral because of the decision in *Coleman v. Block*, a nationwide class action by farm debtors against the FmHA. *Coleman v. Block*, 580 F.Supp. 194 (D.N.D.1984). The *Coleman* court held the FmHA's notice and appeal procedures unconstitutional and issued a permanent injunction prohibiting the FmHA from accelerating loans or foreclosing on defaulting borrowers' property until the procedures were modified. *Id.* at 210–11.

About a month after the acceleration, the Wiewecks sold what was left over from their 1985 grain crop. They turned the proceeds, two checks totalling about $18,-500, over to the FmHA. The FmHA refused to apply the checks to the loans because once loans have been accelerated, FmHA regulations prohibit acceptance of anything less than the full amount due. The FmHA did not return the checks but held them uncashed until June 1989, when the funds were finally placed in a supervised interest-bearing bank account.

In response to *Coleman*, Congress passed the Agricultural Credit Act of 1987 (1987 Act), Pub.L. No. 100–233, 101 Stat. 1568–1718 (1988) (codified in scattered sections of 7 U.S.C., 12 U.S.C., 14 U.S.C.). The 1987 Act and accompanying regulations required the FmHA to change its notice documents and appeal procedures and to take part in state-mandated mediation. To comply with the Act, in September 1988 the FmHA, using the new documents, again notified the Wiewecks that they were in default.

By virtue of the 1987 Act, the FmHA became subject to Minnesota's mandatory mediation law. *See* 7 U.S.C. § 5103(a) (1988); 7 C.F.R. § 1951.912(a) (1989). The Farmer–Lender Mediation Act (Mediation Act), Minn.Stat.Ann. § 583.20–583.32 (West 1988 & Supp.1991), requires lenders to participate in mediation before foreclosing against defaulting farm borrowers. All proceedings against the debtor are stayed while mediation is going on.

The FmHA sent the Wiewecks a notice in April 1989 informing them of their right to mediation. The notice also again informed them that they were in default on their loans. The Wiewecks requested mediation, and they also asked for release of living expenses and farm operating expenses from the crop proceeds they had turned over to the FmHA. The Mediation Act requires that the creditor release money for such expenses for the mediation period. Minn.Stat.Ann. § 583.27(1)(a)(5).

Several mediation sessions were held in the spring and summer of 1989, and the FmHA released approximately $1,150 in operating expenses to the Wiewecks; however, it refused to release any further operating expenses or any money at all for living expenses. The Wiewecks asked the mediator to swear out an affidavit of lack of good faith against the FmHA. The affidavit would have allowed the Wiewecks to obtain court-supervised mediation. *See* Minn.Stat.Ann. § 583.27(2)–(3). The mediator refused, erroneously believing that § 583.27(1) required him to have more than one reason before issuing such an affidavit.

The Wiewecks then sued in Minnesota state court, asking the court to determine that the mediator had abused his discretion in failing to file an affidavit and to order the FmHA to release living and operating expenses. The FmHA removed the action to federal district court.

In the meantime, the Wiewecks had lost their farm, which had been security for another debt. The foreclosure sale was held in March 1988. The Wiewecks continued to farm in 1988 and 1989, however, via a share rental arrangement with a neighbor. They helped to farm his 300 acres and contributed to expenses, receiving one-third of the proceeds in return.

The district court found that the mediator had abused his discretion in failing to issue an affidavit that the FmHA had not acted in good faith by refusing to release living expenses. The court therefore rein-

stated mediation under Minn.Stat.Ann. § 583.27(6)(b)(1). It upheld the mediator's decision as to operating expenses, however, finding that the Wiewecks were not entitled to a release for operating expenses because their farming operation had changed since the notice of default. The court further refused to order release of the living expenses, instead remanding the case back to the mediator. The Wiewecks' motion to modify the district court's order was denied. They then appealed to this court.

While this appeal was pending, the reinstated mediation proceeded. The mediator warned the FmHA in writing that he would issue an affidavit of lack of good faith unless the FmHA released $3,055 to the Wiewecks for living expenses by December 14, 1989. When the FmHA did not comply, the mediator issued the affidavit. The Wiewecks then applied to the Minnesota state court in their county for court-supervised mediation under § 583.27(3). Again, the FmHA removed the action to federal court, where proceedings were stayed as of June 14, 1990, pending this appeal.

## II.

The issues in this case are matters of state law involving the interpretation of the Minnesota Farmer–Lender Mediation Act. We review de novo district court rulings on questions of state law. *See Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

The Mediation Act lists "failure of a creditor to release funds from the sale of farm products to the debtor for necessary living and farm operating expenses" as one definition of "not participating in good faith" in the mediation. Minn.Stat.Ann. § 583.27(1)(a)(5). Section 583.27(2) requires the mediator to issue an affidavit of lack of good faith whenever he or she determines that either party is acting in bad faith as defined in subdivision (1). The utility of an affidavit of lack of good faith against the creditor is that it allows the debtor to ob-

tain court-supervised mediation. *See* Minn. Stat.Ann. § 583.27(3). During court-supervised mediation, which is mandatory upon the debtor's request, "the court may issue orders necessary to effect good faith mediation," i.e., may order funds to be released. *Id.* A mediator's failure to issue an affidavit of lack of good faith is reviewed for abuse of discretion. Minn.Stat.Ann. § 583.27(6)(a). In addition, a party may petition the court to determine the amount that the creditor is obliged to release. Minn.Stat.Ann. § 583.27(1)(d).

### A. Living Expenses

■ The Wiewecks argue that the district court should have ordered FmHA to release living expenses [1] rather than reinstating mediation. They contend that the district court had both the power and the obligation to do so under § 583.27(1)(d), which provides:

> If the debtor and creditors do not agree on the amount of necessary operating expenses or necessary living and operating expenses to be released, the debtor or a creditor ... may petition the district court of the debtor's residence to make a determination of the amount to be released. The court shall hear and make a determination of the amount of living and operating expenses to be released within ten days after receiving the petition.

The FmHA responds that § 583.27(1)(d) applies only when there is a dispute about the amount to be released, not when the lender refuses to acknowledge that any release is required.

The district court refused to award living expenses directly because that is not a remedy listed in § 583.27(6), which gives the court power to review the mediator's failure to issue a lack of good faith affidavit. Subsection (6) provides that if the reviewing court determines that the mediator has abused his or her discretion, it may (1) reinstate mediation; (2) order court-supervised mediation; or (3) allow the creditor to

---

**1.** "Necessary living expenses" are defined as 1½ times the monthly amount the family would get if eligible for AFDC, but not more than $1,600 per month less off-farm income. Minn.Stat. Ann. §§ 583.22(7b), 583.27(1)(b).

proceed with his or her remedy immediately. Minn.Stat.Ann. § 583.27(6)(b). The district court believed that its task was limited to reviewing the mediator's action and did not discuss or even mention § 583.27(1)(d).

We believe the district court could and should have ordered the release of living expenses itself. Section 583.27(1)(d) can reasonably be read to authorize such action by a court. We reject the FmHA's overly technical reading of § 583.27(1)(d) and construe that provision in the context of the aims of the Mediation Act, which was passed specifically to aid farmers overburdened with debt. *See generally* § 583.21.[2] The FmHA reads § 583.27(1)(d) to apply only when there is a dispute about the amount to be released, not when the lender refuses to acknowledge that any release is required—yet the latter type of dispute is the one in which the farmer-debtor needs relief more urgently. When the question is only as to the amount, with both sides agreeing that some amount should be released, the farmer-debtor's needs are less compelling than when the lender refuses to release any money at all. Interpreting the statute to apply only to the situation in which relief is less urgently needed contravenes the general purpose of the legislation.

The subsequent history of this case graphically demonstrates the difficulties that the FmHA's interpretation of the statute creates. When the case was remanded to the mediator, he determined that a specific amount of living expenses should be released. Upon the FmHA's refusal to comply and the mediator's issuance of an affidavit of lack of good faith, the Wiewecks commenced a new action in state court. The FmHA removed this second action, like the first one, to the federal

district court. The second action, in which the court clearly has power to order a release of funds, Minn.Stat.Ann. § 583.27(3), has been held in abeyance pending this appeal. It has been clear for almost two years that the Wiewecks are entitled to a release of living expenses, but the release has not yet taken place. If we were to affirm the district court's decision, the Wiewecks would have to wait for the district court to order release of living expenses in the second lawsuit, the one that has been held in abeyance. Our interpretation of § 583.27(1)(d) avoids this multiplicity of actions and affords direct, expeditious relief. It gives the Wiewecks now what they have had a right to for nearly two years. It also ensures that farmer-debtors who face recalcitrant creditors in the future will not have to wade through the same procedural morass to obtain relief.

We therefore reverse the district court's decision and direct that court to order the FmHA to release living expenses to the Wiewecks immediately.

### B. Operating Expenses

The Mediation Act defines "necessary farm operating expenses" as "a sum or sums adequate to continue, during the mediation period, farm operations begun prior to the notice of default." Minn.Stat. Ann. § 583.22(7a). "Necessary farm operating expenses" do *not* include "expenses for increasing the scale of an ongoing farming operation or planting additional crops." *Id.* The district court ruled that the mediator did not abuse his discretion by failing to find FmHA in bad faith for refusing to release operating expenses, because the Wiewecks' operations at the time of mediation were entirely different from their operations at the time of the acceler-

---

2. This provision reads as follows:

   The legislature finds that the agricultural sector of the state's economy is under severe financial stress due to low farm commodity prices, continuing high interest rates, and reduced net farm income. The suffering agricultural economy adversely affects economic conditions for all other businesses in rural communities as well. Thousands of this state's farmers are unable to meet current payments of interest and principal payable on mortgages and other loan

   and land contracts and are threatened with the loss of their farmland, equipment, crops, and livestock through mortgage and lien foreclosures, cancellation of contracts for deed, and other collection actions. The agricultural economic emergency requires an orderly process with state assistance to adjust agricultural indebtedness to prevent civil unrest and to preserve the general welfare and fiscal integrity of the state.

ation notice. In 1986, the Wiewecks were farming their own 160 acres; in 1989, they were engaged in a share rental arrangement, farming 300 acres owned by someone else. The district court implicitly found that the September 1986 acceleration notice was the notice of default for purposes of § 583.22(7a).

The Wiewecks concede that the district court's ruling was correct if the acceleration notice was the notice of default. They contend, however, that the notice of default for Mediation Act purposes was either the mediation notice or the notices of default sent to comply with the requirements of the 1987 Act. Since the 1987 Act notices and the mediation notice were sent in 1988 and 1989, respectively, and the Wiewecks' farming operations did not change between 1988 and 1989, they are entitled to a release of operating expenses if the acceleration notice was not the notice of default.

We note initially that as the Wiewecks point out, this case is a fluke. Ordinarily, all notices that could possibly be considered notices of default would be sent within a short time from each other, and during this period the debtor's farming operation would normally remain the same. It is only the delay caused by the Coleman injunction that makes it necessary for us to consider the definition of "notice of default." The Minnesota legislature doubtless never envisioned such a problem.

Although the district court judge did not give his reasons for considering the acceleration notice to be the notice of default, that may have been because the answer to seemed obvious. A common-sense definition of notice of default would be the notice that first informed the borrowers that they were in default on their loan. In this case, that would be the 1986 acceleration notice.

All three notices qualify, by their wording, as notices of default. The Wiewecks do not claim that the acceleration notice did not inform them that they had defaulted on their loan; rather, they contend that it was not a valid notice of default *for Mediation Act purposes*. First, they argue that the

1986 acceleration notice was invalid because it was part of a system held unconstitutional in *Coleman* and replaced by Congress in the 1987 Act to reform the abusive practices of the FmHA and other government lenders. Second, the Wiewecks assert that the acceleration notice could not have been the notice of default for Mediation Act purposes because it did not trigger mediation or the Wiewecks' request for expense releases. At the time of the acceleration notice, the FmHA was not required to participate in mediation. It was only the 1987 Act that made the FmHA subject to Minnesota's mediation statute, and there was a gap of more than two-and-one-half years between the acceleration notice and the beginning of mediation on the defaulted debt. In addition, the FmHA did not begin an action to enforce the debt based on the acceleration notice; thus, there was no action to be stayed by the commencement of mediation.

The first argument is easily disposed of. The *Coleman* court held that the FmHA's notice procedures were constitutionally inadequate to allow the FmHA to proceed against the debtor's property, but this is not a foreclosure action. The validity of the notice is not at issue. The point for Mediation Act purposes is whether the acceleration notice informed the Wiewecks that they were in default on their loan, and it is clear that it did.

As to the Wiewecks' second argument, there is no reason to read into the Mediation Act a requirement that the notice of default must trigger or immediately precede mediation to be considered the notice of default for § 583.22(7a) purposes. Nothing in the language of the statute supports such a reading. More importantly, though, the purposes of the statute make clear that it would be wrong for the Wiewecks to receive a release of operating expenses. The reason for requiring the creditor to release expenses is to equalize bargaining power during mediation. Before *Coleman* and the 1987 Act, the FmHA could coerce farm debtors into an unfavorable settlement by refusing to release any of the crop proceeds in which it had a security interest, thus cutting off the farmers' in-

come. *See Coleman v. Block*, 580 F.Supp. at 200; Saxowsky, *Government Response to Financial Stress: The Farm Experience*, 3 Nat. Resources & Env't 28, 61 (1989). That is not a concern here because the FmHA has no power to cut off the Wiewecks' income stream. They now get their income from their current farming operation, a share rental arrangement with another farmer. The funds held by the FmHA are from the sale of 1985 crops grown on land the Wiewecks no longer own or operate. Operating expenses for the Wiewecks' present, completely different farming operation properly come from income generated by that operation, not from sale of their 1985 crops. *Cf. Coleman v. Lyng*, 864 F.2d 604, 612 (8th Cir.1988) (need to allocate FmHA resources fairly justifies deprivation of farmers' income-release rights from past years), *cert. denied*, —— U.S. ——, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989). We therefore hold that the district court did not err in refusing to find that the mediator had abused his discretion on this issue.

### III.

For the foregoing reasons, we affirm the district court's refusal to order the FmHA to release operating expenses to the Wiewecks. We reverse its decision not to order release of living expenses and remand so that it may do so.