**SHERIDAN SQUARE PARTNERSHIP, a Montana Limited Partnership, Plaintiff,**

v.

**UNITED STATES of America, acting through the UNITED STATES DEPARTMENTS OF HOUSING AND URBAN DEVELOPMENT, Jack Kemp, in his official capacity as Secretary of Housing and Urban Development and Michael Chitwood, in his official capacity as Regional Administrator of the Denver Regional Office, region 8, of the United States Department of Housing and Urban Development, Defendants.**

**Civ. A. No. 89–K–692.**

United States District Court, D. Colorado.

April 8, 1991.

---

Howard Buchalter, Denver, Colo., for plaintiff.

Michael Robinson, Brian Kennedy, Durham, N.C., Arthur Goldberg, Boston, Mass., Greg Whitehair, Englewood, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Sheridan Square Partnership developed a 75 unit apartment complex catering to elderly people in Sheridan, Wyoming. The project is publicly assisted under Section 8 of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437f (1978).

Section 8 is administered by the Department of Housing and Urban Development, the defendant in this suit. Under Section 8, private developers are encouraged by HUD to construct housing for low-income individuals. Once HUD approves of the project, it and the developer enter into a Housing Assistance Payment contract. The HAP contract specifies the maximum monthly rental a Section 8 landlord may charge. Under the contract, low-income tenants pay a portion of the total rent according to their means. The bulk of the rent, however, is paid by HUD directly to the developer.

An additional term of the contract provides for periodic adjustments to the monthly rent. The issue of rental adjustments is the subject of this lawsuit. In the early 1980s, disputes arose between certain Section 8 project owners and HUD concerning the proper method for determining rent adjustments. HUD developed a formula based on Automatic Annual Adjustment Factors published annually in the Federal Register. Separate numerical AAAFs were established for each of the four census regions, the states of Alaska and Hawaii, and 72 metropolitan areas. Each factor is determined by relevant economic data.[1]

---

1. For example, HUD calculated the 1987 AAAFs with the following information:

1) The increases in the residential rent component and the fuel and utilities component of the CPI were calculated for the 12–month

HUD, however, began calculating rent adjustments according to a localized survey of market rents in the area instead of the AAAFs. These surveys are called comparability studies. In Sheridan's case, HUD awarded rent increases from 1979–1983 based on the AAAF formula. On August 29, 1984, however, Sheridan applied for a rent increase based on the most recently published AAAF for its area. HUD refused to apply the November 1, 1984 AAAF. Instead, HUD conducted a rent survey of Sheridan, Wyoming area unassisted housing units. Based on the survey, HUD proposed rent adjustments which actually decreased the rent Sheridan would receive. Dissatisfied, Sheridan sued.

In its complaint, Sheridan requests various forms of relief. First, it seeks a declaratory judgment that HUD may not abandon the AAAF factors. Second, it requests injunctive relief to prohibit HUD from withholding rent due Sheridan under the AAAF formula. Third, it requests mandamus relief ordering HUD to reinstate rents calculated under the formula. Fourth, Sheridan claims HUD violated the Freedom of Information Act. Fifth, Sheridan argues HUD violated the Administrative Procedure Act based on defects in HUD's notice and comment rule making procedure. Sixth, Sheridan claims its fifth amendment right to substantive due process was violated, and a recent congressional amendment to Section 8 is unconstitutional.

In a motion for partial summary judgment, Sheridan briefs only those issues pertaining to its first and sixth claims for relief. Hence, only those claims will be considered. For the government, HUD moves for judgment on the pleadings. Spe-

cifically, HUD argues the U.S. Claims Court has jurisdiction over the subject matter. On the merits, HUD argues its use of comparability studies is legal and Congress' later amendment to Section 8 embracing such studies is constitutional. Since HUD's brief in opposition addresses issues beyond a FRCP 12 judgment on the pleadings and discusses the merits of the dispute, I will treat the brief as a cross-motion for partial summary judgment according to FRCP 12(c).

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court clarified the burdens the movant and nonmovant must carry to prevail on a motion for summary judgment.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* Hence, the moving party is responsible for informing the court of its claim and demonstrating the absence of a genuine issue of material fact. The issue in this case is HUD's compliance with federal law and the constitutionality of Congress' amendment. Sheridan's first and sixth claims for relief call for legal conclusions and will be resolved by summary judgment. Since HUD acted in accordance with federal law, and the amendment at issue in this

---

period from June 1985 to June 1986; 2) a shelter rent increase factor was calculated by eliminating the effect of heating costs on the CPI residential rent component ...; 3) a gross rent factor for each of the four Census Regions was calculated by weighing the shelter rent and the fuel and utility increases in accordance with updated 1980 Census State weights of these component parts of rent ...; 4) Adjustment Factors for Contract Rents including the highest cost utility were calculated by adjusting the gross rent factors to reflect variations by rent range in each area based on variations developed from 1983 national AHS data as applied to the local FMR levels; and 5) Adjustment Factors for Contract rents excluding the highest cost utility were calculated by developing updated shelter rents from updated gross rents, by rent ranges, and then dividing the updated shelter rents by that of the previous year.

52 Fed.Reg. 9478, 9479 (1987) (to be codified at 24 C.F.R. § 888).

case is constitutional, I deny plaintiff's motion for partial summary judgment.

## I.

■ According to HUD, the "thrust of the suit is to compel the United States to pay money allegedly due under a government contract" (Df.'s Brief at 11–12). Contract disputes over payment from the government are properly brought in the U.S. Claims Court, *Eagle–Picher Indus. Inc. v. United States*, 901 F.2d 1530, 1532 (10th Cir.1990). HUD further argues Sheridan's constitutional claim is not part of plaintiff's original claim but part of a statutory defense. Thus, HUD asserts this court lacks subject matter jurisdiction under the rule in *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

Sheridan's claim, however, is not merely a disguised contract dispute with the government. Unlike the suit in *Eagle–Picher*, the "thrust of the suit" is not "to obtain money from the United States." 901 F.2d at 1532. Sheridan bases its suit on the claim that Section 8 and its contract with HUD mandates a formula for rent adjustments. Sheridan argues Congress abrogated its rights in violation of the fifth amendment when Congress amended Section 8. Sheridan also seeks declaratory and mandamus relief to attack the prospective and retrospective effect of the amendment.

Sheridan's claims are properly alleged in the plaintiff's complaint and within the "well-pleaded complaint rule" of *Mottley*. Hence, federal question jurisdiction under 28 U.S.C. § 1331 is satisfied. Finally, HUD cites an unpublished order from this District, *Metzel v. United States*, No. 88–M–119 (D.Colo. Sept. 26, 1988), which dismissed a similar claim and instructed the parties to file in the United States Claims Court. The case is distinguishable because *Metzel* occurred before the 1989 Amendment which is attacked as unconstitutional in this case.

## II.

■ Sheridan argues it is entitled to rent adjustments based on published AAAFs.

HUD, however, believes it has the authority not to apply the AAAF formula. HUD argues the use of comparability surveys is recognized by statute and necessary to prevent Section 8 rents from surpassing rents charged in comparable, unassisted housing units in the same general area. According to HUD, a 1989 congressional amendment to Section 8 bolsters its position.

Sheridan's claim presents two issues to analyze. First, does Sheridan have the right to AAAF formula rent adjustments? Second, does the 1989 congressional amendment interfere with Sheridan's rights as a Section 8 landlord?

### A. *Sheridan's Right to AAAF Adjusted Rent.*

When the HAP contract was signed, the statutory authority controlling HUD's calculation of rent adjustments for Section 8 housing was 42 U.S.C. § 1437f(c)(2).

> The assistance contract shall provide for adjustment annually or more frequently in the maximum monthly rents for units covered by the contract to reflect changes in the fair market rentals established in the housing area for similar types and sizes of dwelling units or, if the Secretary determines, on the basis of a reasonable formula.

42 U.S.C. 1437f(c)(2)(A) (1978). This provision makes two points. First, annual rent adjustments—up or down—are required in every HAP contract. Second, HUD may calculate rent adjustments either by surveying the relevant market or by a "reasonable formula."

Regardless of which method HUD uses to calculate the adjustments, Congress placed limits on the overall rent which may be collected.

> Adjustments in the maximum rents as hereinbefore provided shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Secretary.

*Id.* § 1437f(c)(2)(C). This provision is designed to prevent rents in Section 8 housing from escalating or declining beyond those rents collected in comparable unas-

sisted housing. This check on rent adjustments is called a comparability limitation.

The parties, in their arguments, emphasize these two statutory provisions differently. Sheridan focuses on the rent adjustment section while HUD emphasizes the comparability provision. Sheridan claims it is entitled to rent adjustments based on the AAAF "formula" as discussed in section 1437f(c)(2)(A). Sheridan rejects HUD's contention that rent adjustments may be based on market surveys of the particular area.

The tension between sub-sections (2)(A) and (2)(C) of the statute is quieted by language of the text. Section 1437f(c)(2)(A) requires adjustments in rent "to reflect changes in the fair market rentals ... or, if the secretary determines, on the basis of a reasonable formula." HUD initially decided to apply a formula method.

Regardless of the method selected by HUD, Congress placed limitations on the total rent Section 8 landlords may collect. Here, the comparability requirement applies. Section 1437f(c)(2)(C) states: "Adjustments in the maximum rents ... shall not result in material differences" between similar assisted and non-assisted housing units. These two provisions of Section 8 appear to function independently. First, rents are adjusted by a method determined by HUD. Second, rent increases are restricted to comparable market rates. Comparability studies, as an independent check on the AAAFs, are directly contemplated by the statute. Hence, I agree with the recent Claims Court decision which explained, "there is no ambiguity in Section 8(c)(2)(C) as to HUD's authority to conduct comparability studies," *National Leased Housing Association v. United States*, 22 Cl.Ct. 649, 660 (1991).

An independent comparability limitation provision is sensible. Rents charged in assisted housing units should not continue to increase even while the surrounding market falters. Section 8 landlords do not deserve special insulation from market fluctuation. Section 8 guarantees adjustments to rents. HUD has discretion as to its method of adjustment. But whatever method it uses to adjust rents, Congress restricted the adjustment to comparable market rates in the area.

Finding no right to rent adjustments based solely on AAAFs in the statute, the analysis shifts to the contract Sheridan signed with HUD. If the HAP contract is found to award additional rights to Sheridan, Sheridan's claim could have merit. Sheridan refers to section 1.8(b)(2) of its HAP contract with the government:

b. *Automatic Annual Adjustments.*

(2) On each anniversary date of the Contract, the Contract rents *shall* be adjusted by applying the applicable Automatic Annual Adjustment Factor [AAAF] most recently published by the Government ...

(Exhibit 1, Pl.'s Brief in Support) (emphasis added). Sheridan argues this provision in the contract constitutes an "election" by HUD to use the AAAF formula method to calculate rent adjustments.

In contrast, HUD focuses the court's attention on a different provision of the HAP contract: section 1.8(d).

d. *Overall Limitation.* Not withstanding *any other provision of the Contract*, adjustments as provided in this Section shall not result in material differences between the rents charged for assisted and comparable unassisted units, as determined by the Government, provided that this limitation shall not be construed to prohibit differences in rents between assisted and comparable unassisted units to the extent that such differences may have existed with respect to the initial Contract Rents.

(Exhibit 1, Pl.'s Brief in Support) (emphasis added). Set off from the paragraph discussing the formula method, the "Overall Limitation" paragraph begins with the words: "Not withstanding any other provision of the contract" From this, HUD concludes the paragraph constitutes an independent basis of authority for HUD to recompute rental adjustments when the AAAFs would produce rents materially above market rates.

Citing the language in § 1.8(b)(2) of the HAP contract, "[T]he contract rents shall be adjusted" according to the applicable AAAF, Sheridan argues HUD elected to follow the AAAF. Thus, HUD may not switch methods mid-stream. For authority, Sheridan cites *Rainier View Associates v. United States Dept. of Housing*, 848 F.2d 988 (9th Cir.1988), *cert. denied* 490 U.S. 1066, 109 S.Ct. 2065, 104 L.Ed.2d 630 (1989). There, the Ninth Circuit concluded the "shall be adjusted by applying the applicable [AAAF]" language in an identical HAP contract requires HUD to follow the formula method.

The Ninth Circuit construed the "Overall Limitation" paragraph in the contract and § 1437f(c)(2)(C) as a limitation on calculating the AAAF formula itself and not an independent basis for adjusting rents. "HUD misconstrues the role of the overall limitation. The overall limitation provision ... is clearly a limitation of the calculation of the formula used to adjust rents, and not an independent basis for making annual rent adjustments." *Rainier View*, 848 F.2d at 991. Further, the Ninth Circuit reads the "Contract Rents *shall* be adjusted" language in the HAP contract as an election by HUD.

> In the contract, HUD elected the formula method. Having made its choice, HUD cannot now change its mind. The overall limitation provision of the statute and the contract permit HUD to adjust the formula factors in light of market conditions, but it does not permit HUD to abandon entirely the formula method it chose and to adjust rents solely on the basis of a market survey.

*Id.*

I disagree with the Ninth Circuit's analysis for three reasons. First, the "Overall Limitation" paragraph, by its terms, supersedes other provisions in the contract. The paragraph begins, "Not withstanding any other provision of this contract" (Exhibit 1, Pl.'s Brief in Support, § 1.8(d)) The language is clear; the paragraph is meant to trump conflicting provisions. The paragraph goes on to mandate a comparability limitation which applies to all rent adjustment provisions of the contract. The language belies the contention that HUD made an exclusive election to follow the AAAF regardless of the results.

Second, I disagree with the Ninth Circuit's conclusion that by using individual comparability surveys, HUD "abandon[s] entirely" the formula method. The record in this case indicates HUD uses the AAAF adjusted rent figure as the first step in calculating approved rent adjustments. For example, a January 1986 memorandum to all regional directors of housing and Section 8 contract administrators from HUD Deputy Assistant Secretary Silvio J. DeBartolomeis (Exhibit F, Pl.'s Amended Complaint) instructs administrators on procedures for calculating annual rent adjustments.

Throughout the document, HUD officials are instructed to calculate rent adjustments by applying the relevant AAAF for their area. If that figure materially exceeds[2] the rent of a comparable project, the contract administrator must accept the lower amount as rent for the project. Whether or not the AAAF-calculated rent is accepted, the formula is not ignored by HUD. Sheridan's claim that HUD ignored the AAAF formula finds little support. Documents in Sheridan's brief indicate HUD analyzes a proposed rent increase both in terms of the applicable AAAF and the realities of the marketplace.

Related to Sheridan's argument that HUD ignores the AAAF is Sheridan's challenge to the accuracy of the comparability surveys themselves. According to Sheridan, HUD used distant locations such as Gillette, Wyoming for comparable locations for the purpose of adjusting Sheridan's rent. Hence, the surveys are flawed. This argument, however, has little to do with Sheridan's rights under the HAP contract. Sheridan seems to argue HUD violated administrative law standards by misstating

---

**2.** HUD determined a "material difference" exists whenever the adjusted Section 8 rent would exceed 120 percent of the sum of the comparable rent and any initial difference or premium preserved in the HAP contract. Sheridan does not dispute this determination.

market values. Sheridan is free to argue HUD acted in an arbitrary or capricious manner in conducting the surveys thus violating the Administrative Procedure Act.

This argument, however, cannot be considered here. First, the claim is rife with factual disputes and not resolvable on a motion for summary judgment. Second, Sheridan's complaint does not raise the issue. Although its fifth claim for relief refers to the Administrative Procedure Act, the claim discusses HUD's notice and comment rule making. The allegations in claim five have nothing to do with an arbitrary market survey.

My third and final reason for departing from the Ninth Circuit's decision is it makes little practical sense. According to the *Rainier View* opinion, the comparability requirement is a check only on the formulas themselves and not an independent basis for adjusting the rents. The AAAF formula is a rough approximation of market conditions. HUD established distinct AAAFs by dividing the country into four census regions and 72 metropolitan areas. Even if the AAAF method is refined or modified to create smaller geographic areas, disparities between the rents of assisted and unassisted units may still remain.

One can imagine a scenario where the AAAF for a region neglects significant details about a particular community. Within a particular community, events or features of a single neighborhood could produce variations even the most particular AAAF could fail to reflect. Hence, individual market surveys are a necessary check on rent adjustments to insure Section 8 rents do not exceed rents in comparable, unassisted units. The language, structure and purpose of the HAP contract and Section 8 confirm this analysis.

I am also skeptical that rents are any different under the calculations approved in *Rainier View*. As the Claims Court explained in *National Leased Housing*, the rents collected are the same. It makes little difference whether HUD uses the current AAAF for the region and adjusts the rent according to local market data, or HUD modifies an existing formula to reflect accurately the value of an individual project. Since nothing in the legislative history "suggests any pertinent congressional concern about the methodology," and "[t]he two methodologies should be expected to produce the same result," *National Leased Housing*, at 662, I am not persuaded by the Ninth Circuit decision.

B. *Effect of Congressional Amendment § 801 on Sheridan's Rights.*

In 1989, Congress entered the fray by passing an amendment known as Section 801 of the Department of Housing and Urban Development Reform Act of 1989, Pub.L. No. 101–235, 103 Stat.1987 (1989) ("§ 801"). The amendment specifically authorizes HUD to adjust rents, up or down, based on comparability studies. Prospectively, § 801(c) amends the comparability provision of 42 § 1437f(c)(2)(C) to approve the use of comparability surveys as an independent method of adjusting rent:

Adjustments in the maximum rents under subparagraphs (A) and (B) shall not result in material differences between the rents charged for assisted units and unassisted units of similar quality, type, and age in the same market area, as determined by the Secretary. In implementing the limitation established under the preceding sentence, the secretary shall establish regulations for conducting comparability studies for projects where the secretary has had reason to believe that the application of the formula adjustments under subparagraph (A) would result in such material differences.

Retrospectively, § 801 applies to all owners whose rents were previously adjusted on the basis of comparability studies or whose contracts required them to request an adjustment but failed to do so because they feared a negative adjustment. For these owners, § 801 authorizes HUD to adjust the rents from 1980 to the present by either applying the AAAFs to that portion of the contract rent not attributable to the debt service, or by multiplying 30% of the applicable AAAF by the entire contract rent, and awarding whichever sum is greater.

According to Sheridan, Congress' amendment to Section 8 unconstitutionally interferes with vested rights under the HAP contract. According to Sheridan, § 801 reduces HUD's contractual obligation to Section 8 landlords. Because § 801 ratified HUD's 1984 decision not to apply the AAAF adjustment, Sheridan believes the amendment is unconstitutional. Both parties agree Sheridan's due process claim survives only if it demonstrates it has a property right which is violated, (Pl.'s Reply Brief at 16; Def.'s Brief at 16). *See e.g., Bowen v. Public Agencies Opposed to Social Security Entrapment*, 477 U.S. 41, 54–55, 106 S.Ct. 2390, 2397–2398, 91 L.Ed.2d 35 (1986). But by asserting the right to AAAF-adjusted rent, Sheridan seems to claim a property right to above-market rent. (HUD would not depart from the formula unless material differences would result. Hence, Sheridan was denied AAAF-adjusted rent because such rent would exceed market rates.)

As discussed previously, Sheridan has no right to rent adjustments based exclusively on an AAAF formula. Those rents may be adjusted to achieve parity with the private housing market. Before Congress adopted § 801, this conclusion was merely statutory interpretation. Now, the amendment removes any doubt about the proper construction of Section 8. As the Supreme Court explained in *Federal Housing Administration v. Darlington, Inc.*, 358 U.S. 84, 90, 79 S.Ct. 141, 145, 3 L.Ed.2d 132 (1958),

> Subsequent legislation which declares the intent of an earlier law is not, of course, conclusive in determining what the previous Congress meant. But the later law is entitled to weight when it comes to the problem of construction.

Sheridan's claim runs contrary to the plain language of the statute. Section 801 merely affirms the most credible reading of sub-section (c)(2)(C).

Hence, I disagree with the conclusion reached by *Alpine Ridge Group v. Kemp*,

No. C29–1654R, —— F.Supp. —— (W.D. Wash. Sept. 20, 1990), which held § 801 unconstitutional. That court felt bound by the Ninth Circuit's decision in *Rainier View*. But I disagree with the Ninth Circuit's decision and am not obligated to follow it. Finding no absolute right to formula-adjusted rent, under the contract, the subsequent discussion in *Alpine Ridge* about Congress' interference with a vested right is unpersuasive. I conclude § 801 does not interfere with the legal expectations of Sheridan.

Finally, § 801 imposes a settlement to resolve the ongoing disputes between HUD and Section 8 landlords over past rent adjustments. Again, nothing in the text of § 801 interferes with the expectations of Sheridan. Both the un-amended Section 8 and the HAP contract gave HUD the right to limit rent adjustments to market rates notwithstanding the AAAF.[3]

Retrospectively, § 801 addresses a gap during which Section 8 landlords and HUD disputed the proper amount of rent adjustments. For the period between 1980 and the date the amendment takes affect, § 801 specifically addresses three categories of Section 8 landlords: 1) those landlords whose rent was reduced by the application of comparability studies; 2) landlords whose rent was not increased by the full amount otherwise permitted under the AAAF; and 3) landlords who failed to request a rent adjustment for fear their rent would be adjusted downward.

For these three categories of landlords, § 801 authorizes an "exclusive method" for settling rent disputes with HUD. According to § 801(a)(1), new rent adjustments shall equal the formula factor for the year multiplied by the year's contract rent minus that portion of the rent attributable to debt service on the project. (AAAF × (rent − debt service)). Alternatively, § 801 guarantees landlords retroactive payment of at least 30% of the year-to-year increases the AAAF would have yielded regardless of any comparability study.

---

**3.** This does not mean HUD has complete discretion to avoid applying the AAAF. HUD's comparability survey and decision to apply its results is reviewable under administrative law principles.

Sheridan assails this provision as an unconstitutional interference with a vested contract right. Sheridan argues it is forced to accept 30 cents on the dollar. But § 801 only affects three kinds of landlords. In this case, Sheridan qualifies as a landlord whose rent was reduced by a comparability study conducted by HUD. Before HUD could have reduced Sheridan's rent based on a comparability study, HUD must have made a determination under Section 8(c)(2)(C) and HAP contract paragraph 1.8(d) that comparable unassisted units in the area were substantially below the AAAF adjusted rent. Despite this fact, § 801 guarantees Sheridan at least 30% of the AAAF formula increases. Before the amendment, Sheridan was not entitled to any increases in rent if the market for comparable units went down. Sheridan is actually left with more than 100 cents on the dollar.

If a Section 8 landlord disputes the initial application of a comparability study or the accuracy of HUD's survey, again, this is an administrative law claim which does not implicate the constitutionality of § 801. Hence, the amendment is constitutional both in prospective embrace of future comparability studies and retrospective settlement of disputes.

Finally, one of plaintiff's arguments, although unpersuasive, deserves mention. Sheridan sounds an ominous alarm about the negative implications an unfavorable decision in this case would have on private investment in public housing. Sheridan explains, "[C]ontracts were signed and promises made by HUD to induce the private sector, such as plaintiff herein, to spend money and assume the risk of constructing housing for the poor and elderly," (Pl. Reply Brief at 2). If Section 8 landlords entered HAP contracts with the government to secure above market rent and insulation from market forces, my decision would deter these landlords.

But Section 8 was designed to provide a vital product to residents and a reasonable return to the developers. The HAP contract fixes initial rents and outlines a mechanism for adjusting rents as market conditions change. Section 8 landlords are secure in that rent will never drop below the original fixed rate. Also, the initial difference or premium between contract rates and market rates at the time the contract was signed is protected. Finally, landlords are secure in that the government and not individuals owe the lion's share of the rent. Section 8 landlords, however, must submit to the dangers of market fluctuation. If this fact deters private developers from investing in the otherwise sheltered arena of public housing, my decision will not affect their investment decision.

Sheridan received the deal for which it bargained. The comparability language in Section 8 and "Overall Limitation" paragraph in the HAP contract contradict Sheridan's argument that it deserves AAAF calculated rent. Congress' 1989 amendment, § 801, does not alter the rights of Section 8 landlords. Hence, the amendment is constitutional, and Sheridan's motion for partial summary judgment on claims one and five is

DENIED.