**SHERIDAN SQUARE PARTNERSHIP,**
**a Montana limited partnership,**
**Plaintiff,**

v.

**UNITED STATES of America, acting through the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Jack Kemp, in his official capacity as Secretary of Housing and Urban Development, and Isaiah Kelley, in his official capacity as Regional Administrator of The Denver Regional Office, Region 8, of the United States Department of Housing and Urban Development, Defendants.**

**Civ. A. No. 89–K692.**

United States District Court,
D. Colorado.

Feb. 18, 1994.

Howard Buchalter, Katch, Sender & Wasserman, P.C., Denver, CO, for plaintiff.

Wm. G. Pharo, Asst. U.S. Atty., Denver, CO, and John Herold and Howard Schmeltzer, Dept. of HUD, Washington, DC, for defendant.

## ORDER GRANTING SUMMARY JUDGMENT AND DENYING MOTION FOR SANCTIONS

KANE, Senior District Judge.

The issue before me is whether Congress' passage of section 801 of the Housing and Urban Development Reform Act of 1989, Pub.L. No. 101–235, 103 Stat. 1987, 2057–59, moots this case. Defendants raise this issue by way of a motion for summary judgment,

their third since this case was filed. Plaintiff responds that Defendants' motion is so clearly without merit that I should impose Rule 11 sanctions. I disagree. Moreover, I grant summary judgment in favor of the Defendants.

I. *Facts and Procedural History.*

This case is one of several in recent years in which owners of federally-subsidized low income housing have sued to recover amounts from the federal government under Housing Assistance Payments (HAP) contracts made pursuant to Section 8 of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1437f. *See, e.g., Rainier .View Assocs. v. United States ex rel. Dept. of Housing & Urban Dev.,* 848 F.2d 988 (9th Cir.1988), *cert. denied,* 490 U.S. 1066, 109 S.Ct. 2065, 104 L.Ed.2d 630 (1989); *Carmichaels Arbors Associates v. United States ex rel. Dept. of Housing & Urban Dev.,* 789 F.Supp. 683 (W.D.Pa.1992); *National Leased Housing Ass'n v. United States,* 22 Cl.Ct. 649, 651 (1991). Under the Section 8 program, project owners are induced to construct housing for low income persons by the guarantee that the federal government will subsidize them for the lower rents they receive. The HAP contract provides for an initial rent for the Section 8 property (the "contract rent"), a portion of which the tenant pays directly to the owner and the remainder of which the owner receives as a subsidy from the government. The contract rent is periodically adjusted to account for inflation and other factors. *See generally National Leased Housing,* 22 Cl. Ct. at 651.

In the 1970's, the Department of Housing and Urban Development (HUD), which administers the Section 8 program, adjusted contract rents by application of an Automatic Annual Adjustment Factor (AAAF) established for the region in which the project was located. AAAF's are published annually in the Federal Register. *See id.; Sheridan Square Partnership v. United States ex rel. Dept. of Housing & Urban Dev.,* 761 F.Supp. 738, 739 (D.Colo.1991) (hereinafter, *"Sheridan Square I "*). Then, in the early 1980's, HUD began calculating contract rent adjustments based on localized market surveys known as "comparability studies." Use of these comparability studies generally resulted in smaller increases to contract rent than under the AAAF, and in some cases, rents were decreased. This led many owners to bring legal action against the federal government and HUD to require them to apply the AAAF's, not comparability studies, in determining contract rent adjustments. *See National Leased Housing,* 22 Cl.Ct. at 651.

Plaintiff Sheridan Square Partnership is the owner of a Section 8 project in Sheridan, Wyoming. In 1984, HUD adjusted the contract rent for Sheridan Square's project based on a comparability study, reducing the rent below that originally established under the HAP contract. In 1989, after HUD consistently denied its requests to readjust rents based on the application of the AAAF, Sheridan Square filed this action. In its complaint, it sought: (1) a declaratory judgment that HUD may adjust contract rents based solely on the AAAF's and not comparability studies, (2) an injunction requiring HUD to reestablish contract rents based on application of the AAAF's, (3) mandamus relief of the same nature, (4) relief under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(1)(D), for HUD's failure to publish its procedures for conducting comparability studies in the *Federal Register,* (5) relief under the Administrative Procedure Act (APA), *id.* § 553(b)–(e), for HUD's failure to follow notice and comment rulemaking procedures in employing comparability studies, and (6) damages for the deprivation of property without due process.

On July 5, 1990, Sheridan Square moved for partial summary judgment on its first claim for declaratory judgment and its sixth claim for deprivation of property without due process. Defendants cross-moved for judgment on the pleadings. In an order entered April 8, 1991, I denied Sheridan Square's motion and granted Defendants' motion, dismissing the first and sixth claims. *See Sheridan Square I,* 761 F.Supp. 738. I held that, under the language of the HAP contract and Section 8, the government could properly rely on a comparability study to adjust contract rent when application of the relevant AAAF would "result in material differences

between the rents charged for assisted and comparable unassisted units," as prohibited by Section 8, 42 U.S.C. § 1437f(c)(2)(C). *See id.* at 741–42. Thus, I concluded that under both the HAP contract and Section 8, Sheridan Square could not claim any right to contract rent adjustments based exclusively on application of the AAAF's. *Id.* at 742–44.

Finally, I addressed the effect of 1989 legislation amending Section 8. With passage of section 801 of the Housing and Urban Development Reform Act of 1989, Congress expressly authorized HUD to adjust contract rents by using comparability studies,

> [w]here the Secretary determines that such modified annual adjustment factor cannot be established or that such factor when applied to a particular project would result in material differences between the rents charged for assisted units and unassisted units of similar quality, type, and age in the same market area....

42 U.S.C. § 1437f(c)(2)(C). Section 801(e) further directs HUD to promulgate regulations governing comparability studies. *Id.* (set out as note to this statutory section). Until those regulations take effect, however, Section 801(a) limits HUD's future adjustment of contract rents to an established formula [1] and permits project owners who have been denied rental adjustments based on a comparability study to request past payments in an amount they would have received had the new formula been applied. *See id.* Rejecting Sheridan Square's argument that this new legislation unconstitutionally interfered with their vested right to AAAF–adjusted rents under the HAP contract, I upheld section 801 as constitutional, since Sheridan Square had no vested right to AAAF–adjusted rents. 761 F.Supp. at 745.

Based on my ruling in *Sheridan I*, Defendants then moved for summary judgment on the remaining claims against them. Sheridan Square responded to the motion and further moved to amend its complaint to add an eighth claim under the APA, alleging that the HUD's reliance on poorly-executed comparability studies was arbitrary and capricious, and a ninth claim, asserting that section 801 constituted a taking in violation of the Fifth Amendment. On March 2, 1992, I granted Defendants' motion in part, dismissing the second, third and seventh claims for relief. I denied the motion as to the fourth claim under FOIA and the fifth claim under the APA, ruling that Defendants' attempt to characterize these claims as simply restatements of the previously-dismissed first and sixth claims was incorrect and that "defendants have not demonstrated that they are entitled to judgment as a matter of law on these claims." (Order Mot.Summ.J. & Mot. Amend Compl. at 2.) I likewise denied Sheridan Square's motion to amend as to the proposed ninth claim for relief, but granted the motion as to the eighth claim under the APA.

On December 14, 1992, I granted Sheridan Square's unopposed motion for stay of the proceedings pending the Supreme Court's ruling in *Cisneros v. Alpine Ridge Group*, — U.S. ——, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993), in which the constitutionality of section 801 was directly before the Court. The Supreme Court issued its ruling on May 3, 1993. *See id.* Interpreting the HAP contract and Section 8 consistent with my decision in *Sheridan Square I*, the Court held that because Section 8 project owners "have no contract right to unobstructed formula-based rent adjustments," it need not consider whether section 801 "unconstitutionally abrogated such a right." *Id.* —— U.S. ——, 113 S.Ct. at 1905. On June 29, 1993, the stay of this case was lifted.

Currently, Sheridan Square's complaint contains three live claims: the fourth claim for violation of FOIA, the fifth claim for violation of the APA's notice and comment rulemaking procedures, and the eighth claim for violation of the APA's prohibition against arbitrary and capricious agency action. Defendants now move for summary judgment, arguing these claims are rendered moot by language in section 801(a) which provides the

---

1. Under this formula, HUD may adjust rents "by either applying the AAAFs to that portion of the contract rent not attributable to the debt service, or by multiplying 30% of the applicable AAAF by the entire contract rent, and awarding whichever sum is greater." *Sheridan Square I*, 761 F.Supp. at 744.

exclusive method by which disputes over HUD's use of comparability studies may be resolved. Alternatively, they maintain that even if the claims are not moot, HUD did not violate the FOIA or APA. Without directly confronting the mootness question, Sheridan Square argues that material issues of fact preclude summary judgment and that it should be awarded attorney fees under Rule 11 for having to respond to Defendants' allegedly redundant motion.

## II. *Summary Judgment.*

Defendants' primary argument is that section 801 precludes Sheridan Square from recovering on any of its remaining claims. They premise their argument on language in section 801, which states: "[t]he method provided by this subsection [to readjust contract rents reduced by comparability studies] shall be the exclusive method by which retroactive payments, whether or not requested, may be made for projects subject to this subsection for the period from fiscal year 1980 until the regulations issued under subsection (e) take effect." Defendants maintain that Sheridan Square's monetary recovery is therefore limited by the formula established in section 801(a)(1), which guarantees project owners no less than thirty percent of the AAAF adjustments they otherwise would have received, and that its claims for prospective and injunctive relief are moot because section 801(e) now requires HUD to promulgate new regulations for comparability studies in accordance with FOIA and the APA.[2] To my knowledge, no other court confronted with a claim based on a HAP contract has directly considered the effect of the foregoing provision of section 801(a).

Sheridan Square's response to this motion provides little guidance. Rather than addressing head-on the issue of whether section 801(a) provides its exclusive remedy, Sheridan Square points to similar language in the Supreme Court's decision in *Alpine Ridge* and my opinion in *Sheridan Square I* indicating that a project owner may state a claim under the APA based on the inaccuracy of the particular comparability study applied to it. *See Alpine Ridge*, —— U.S. ——, 113

S.Ct. at 1904 ("If respondents have been denied formula-based rent increases based on shoddy comparisons, their remedy is to challenge the particular study, not to deny HUD's authority to make comparisons."); *Sheridan Square I*, 761 F.Supp. at 744 ("Sheridan is free to argue HUD acted in an arbitrary or capricious manner in conducting the surveys thus violating the Administrative Procedure Act.") It also engages in extensive argument of the merits of its FOIA and APA rulemaking claims, which is irrelevant if they are moot.

The best support for Defendants' position that these claims are moot appears in *Coleman v. Lyng*, 864 F.2d 604 (8th Cir.1988), *cert. denied*, 493 U.S. 953, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989). In that case, farmers who had received loans from the Farmers Home Administration (FmHA) challenged the validity of the agency's loan liquidation and foreclosure procedures, arguing that agency forms were sent late, failed to notify farmers of important rights and were otherwise unclear. The district court agreed and entered injunctive relief in favor of a first class of farmers, who had received the faulty forms but whose loans had not been accelerated, and a second class of farmers, whose loans had been accelerated but who still retained title to their property. It denied injunctive relief to a third class, farmers who had already lost their property, concluding that equitable considerations precluded retroactive relief. *See id.* 864 F.2d at 607–08.

While the district court's ruling was on appeal, Congress enacted the Agricultural Credit Act of 1987, Pub.L. No. 100–233, 101 Stat. 1568, specifically in reaction to the *Coleman* case. *See* 864 F.2d at 609. The Act required the FmHA to give farmers faced with adverse action on their loan timely and complete notice of all of their rights. It further forbade FmHA from taking such adverse action until the agency had promulgated regulations to carry out the notice provisions of the Act. Finally, it granted limited retroactive relief to the second class of farmers whose loans had been accelerated but still retained title to their property, in the

---

**2.** HUD has now published proposed regulations governing the future use of comparability stud-

ies. *See* 57 Fed.Reg. 49,120 (1992). As of this date, final regulations have not been issued.

form of a release of up to $18,000 of security income over twelve months to pay for essential expenses. *See id.* at 610.

In light of the passage of new legislation requiring the FmHA to improve its procedures, the FmHA conceded that its appeal, in which it contended that the district court erred in finding its procedures constitutionally deficient, was moot. *Id.* at 609. Despite the relief they received under the Act, however, the second class of farmers maintained that their cross-appeal was not mooted by the new legislation. They contended that they were denied due process of law because they might have been entitled to the release of security exceeding $18,000 and lasting more than a year. *Id.* at 610. In other words, their Constitutional remedy exceeded the limited relief granted under the Act.[3]

The appellate court rejected this argument. First, it held that

> Congress' obvious intent was that the 1987 Act would function as a legislative enactment of the remedy for the grievances presented in this case.

> We lack the power to add to or subtract from the remedy enacted by Congress. This is true, not because Congress can determine how particular cases before the courts are decided, but because the actual source of any relief in this case is necessarily the statutory provision for agricultural credit which Congress amended in the 1987 Act. Congress is free to alter such a system of entitlement during the pendency of a case, and when it does so, the reviewing court must "apply the law as it is now, not as it stood below."

*Id.* at 611 (quoting *Kremens v. Bartley*, 431 U.S. 119, 129, 97 S.Ct. 1709, 1715, 52 L.Ed.2d 184 (1977)). To support its view that Congress may alter the rights of parties during pending litigation, "even where this change may retroactively eliminate an initially meritorious claim," the *Coleman* court pointed to other cases in which this had occurred: *Austin v. City of Bisbee, Ariz.*, 855 F.2d 1429

(9th Cir.1988) (retroactive exemption of state and local governments from Fair Labor Standards Act extinguished claim), and *Arkansas ex rel. Arkansas State Highway Comm'n v. Goldschmidt*, 627 F.2d 839 (8th Cir.1980) (retroactive change in formula for allocating federal highway funds mooted lawsuit). Finally, the court reasoned that, while

> the District Court decided this case on the basis of the Due Process Clause, a provision which is beyond the reach of Congress's legislative power ... the alleged property right which the farmers sought to vindicate against unconstitutional deprivation is itself entirely a creation of statute. "Property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source [of law] that secure certain benefits and that support claims of entitlement to those benefits." In particular, it is only a statute that entitles an FmHA borrower to a release of income from the sale of secured crops: Nothing in the Constitution itself guarantees farmers such a security income release. Although plaintiffs might obtain injunctive relief ordering the provision of statutory benefits denied without due process, courts have no further remedial power when Congress validly amends the statute authorizing benefits.

864 F.2d at 611–12 (citations omitted).

A similar argument can be made here. Like the Agricultural Credit Act of 1987 at issue in *Coleman,* section 801 of the Housing and Urban Development Reform Act of 1989 was enacted at least partially in response to litigation over HUD's denial of AAAF-based increases. *See National Leased Housing,* 22 Cl.Ct. at 652 (section 801 a response to decision in *Rainier View,* wherein Ninth Circuit held AAAF-adjusted rents were required under HAP contract). Since Congress may change the amount of security released in connection with FmHA loans, the formula for allocating federal highway funds, and the

---

**3.** Sheridan Square threatens to make a similar argument here, stating, "Plaintiff would not preclude a due process challenge based upon the right to have rents set in accordance with properly performed market studies of *comparable* units. If such rents exceeded Section 801 imposed settlements, Section 801 could possibly face a due process challenge...." (Pl.'s Br.Opp'n Mot.Summ. J. at 31 n. 15.) However, no such claim is framed in its complaint.

coverage of the Fair Labor Standards Act, it may also change the formula by which rent subsidies are computed under the Section 8 program. It has done so here and has made that formula retroactive to adjustments from and including fiscal year 1980. Thus, section 801 operates to determine the amount retroactive payments available under the Section 8 program. *See Coleman,* 864 F.2d at 655, 656.

Following the rationale of *Coleman v. Lyng,* Sheridan Square's remaining claims in this lawsuit are subject to summary judgment. First, to the extent these claims could be construed as requesting monetary damages, they are barred. *See* 5 U.S.C. § 702. As to Sheridan Square's fourth claim under FOIA, the consequence of HUD's failure to publish rules regarding comparability studies in the *Federal Register,* assuming that publication was required, is that Sheridan Square may not be "adversely affected" by the studies. That is now guaranteed under section 801(a), which requires HUD to recalculate rents retroactively under the new formula. Second, as to its fifth claim that HUD comply with the APA by following notice and comment rulemaking procedures and by publishing regulations governing comparability studies in the Federal Register, HUD has complied. *See* 57 Fed.Reg. 49,120 (1992). If Sheridan Square finds fault with the new regulations, it must challenge them in a separate action. *See Coleman,* 864 F.2d at 610 n. 5. Finally, as to any injunctive relief that the court might order in connection with Sheridan Square's ninth claim that HUD's comparability studies were arbitrary and capricious under the APA, such relief would have no practical effect. Under section 801, HUD may not use comparability studies and must apply the formula set forth in section 801 to calculate rent adjustments until its new regulations governing comparability studies are implemented. Therefore, all of Sheridan Square's remaining claims are moot.

Accordingly, IT IS ORDERED THAT Defendants' motion for summary judgment is GRANTED. Since the motion clearly satisfies Rule 11's standards, Sheridan Square's motion for attorney fees and costs pursuant to Rule 11 is DENIED.