**SHERIDAN SQUARE PARTNERSHIP, a Montana Limited Partnership, Plaintiff–Appellant,**

v.

**UNITED STATES of America, acting through the United States Department of Housing and Urban Development; Isaiah Kelly, in his capacity as Regional Administrator of the Denver Regional Office, Region 8, of the United States Department of Housing and Urban Development; and Jack Kemp, in his official capacity as Secretary of Housing and Urban Development, Defendants–Appellees.**

No. 94–1170.

United States Court of Appeals, Tenth Circuit.

Sept. 11, 1995.

Howard M. Buchalter (Bonnie A. Bell with him on the briefs), of Katch, Sender & Wasserman, P.C., Denver, CO, for plaintiff–appellant.

Elise S. Shore, Attorney, Civil Division, Department of Justice, Washington, DC (Frank W. Hunger, Assistant Attorney General, and Douglas N. Letter, Attorney, Civil Division, Department of Justice, Washington, DC, Henry L. Solano, United States Attorney for the District of Colorado, Denver, CO, John W. Herold, Associate General Counsel, Howard M. Schmeltzer, Assistant General Counsel, and Michael T. Robinson, Senior Trial Attorney, U.S. Department of Housing and Urban Development, Washington, DC, with her on the brief), for defendants–appellees.

Before BALDOCK, McKAY, and EBEL, Circuit Judges.

McKAY, Circuit Judge.

This appeal represents the latest round in the long-running battle between the government of the United States and the owners of Sheridan Square, a low-income housing development in Sheridan, Wyoming. A complete account of the facts of the case may be found in the published opinions of the district court, *see Sheridan Square Partnership v. United States,* 844 F.Supp. 645 (D.Colo.1994); *Sheridan Square Partnership v. United States,* 761 F.Supp. 738 (D.Colo.1991); *see also Cisneros v. Alpine Ridge Group,* — U.S. —, 113 S.Ct. 1898, 123 L.Ed.2d 572 (1993). Briefly summarized, this action arose as one of a number of disputes between the Department of Housing and Urban Development (HUD) and the owners of Section 8 housing projects over the proper method of determining the rent subsidies paid by the government to the project owners. The owners contended that HUD was constrained to calculate yearly adjustments using the applicable Automatic Annual Adjustment Factor (AAAF), a multiplier based upon market trends. HUD, noting that exclusive use of the AAAFs occasionally produced subsidized rents well in excess of market rates, asserted the authority to set rents by reference to market surveys of the rents of comparable private developments. HUD won this argu-

ment. In *Alpine Ridge,* the Supreme Court held both that the owners held no property right (contractual or otherwise) in AAAF-based rents and that the statutory scheme contemplated the use of market surveys as an independent check upon project rents. *See* — U.S. at — – —, 113 S.Ct. at 1903–05.

*Alpine Ridge* did not end this litigation, however. Sheridan Square continued to challenge, under both the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment, the procedures that HUD employed in conducting its comparative surveys. Sheridan Square also asserted claims under the Freedom of Information Act (FOIA) and those provisions of the Administrative Procedure Act that govern notice-and-comment rulemaking. The government moved for summary judgment, arguing that the passage of Section 801(a)(1) of the Department of Housing and Urban Development Reform Act of 1989, 103 Stat. 2057 (1989), *codified at* 42 U.S.C. § 1437f note, mooted Sheridan Square's remaining claims. The district court agreed, and granted the motion. Sheridan Square now appeals the entry of summary judgment against its claims of arbitrary and capricious conduct violative of the APA and the Due Process Clause.

Section 801, in essence, imposed a congressionally determined settlement upon the numerous actions brought by project owners against HUD. It prospectively authorized HUD to use comparability studies as an independent limit upon rent adjustments. More significantly, § 801(a)(1) ordered HUD to make retroactive payments to those project owners whose rents had been adversely affected by HUD's prior use of market surveys. These payments, however, equaled (in most cases) only thirty percent of the rent adjustments to which the owners would have been entitled under the AAAF system—in effect, giving the owners a partial settlement of the amounts in dispute. *Alpine Ridge* upheld the constitutionality of this imposed remedy insofar as it limited AAAF adjustments: as the owners had no property right to the AAAF adjustments, they could make

out neither a takings claim nor a substantive due process claim under the Fifth Amendment. *See* —— U.S. at —— – ——, 113 S.Ct. at 1903–05.

■ We affirm the district court's well-reasoned conclusion that § 801(a)(1) moots Sheridan Square's assertions of procedural improprieties by HUD. We must "apply the law as it is now, not as it stood [before]." *Kremens v. Bartley,* 431 U.S. 119, 129, 97 S.Ct. 1709, 1715, 52 L.Ed.2d 184 (1977). The rental adjustments mandated by § 801(a)(1), not the values derived from the disputed market studies, are now the retroactive measure of the subsidies due Sheridan Square. Thus the statute, and not the actions of HUD, is now the cause of any loss perceived by the Appellant. Whatever errors may have flawed HUD's comparability studies are of no moment because the studies themselves no longer have legal effect. Claims arising from the studies are therefore extinguished irrespective of their prior merits. *See Coleman v. Lyng,* 864 F.2d 604, 611 (8th Cir. 1988) ("Congress . . . can change the statutory rights of litigants, even where this change may retroactively eliminate an initially meritorious claim, except where the new statute itself is for some reason unconstitutional."), *cert. denied sub nom.,* 493 U.S. 953, 110 S.Ct. 364, 107 L.Ed.2d 351 (1989).

Recognizing the possibility that § 801(a)(1) might preclude a direct attack upon HUD's actions, Sheridan Square alternatively attacks the statute itself on both procedural and substantive due process grounds. We reject the procedural challenge because we conclude that Sheridan Square has failed to rebut the strong presumption of rationality afforded congressional action. We need not reach the merits of the substantive due process claim because we conclude that Sheridan Square failed to raise it in the district court.

■ Although the Due Process Clause places more stringent constraints upon the retroactive reach of Congress than upon its prospective authority, we nonetheless favor retroactive economic legislation with a presumption of constitutionality and uphold such legislation unless the challenging party proves it to be arbitrary or irrational. *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 728–31, 104 S.Ct. 2709, 2717–19, 81 L.Ed.2d 601 (1984); *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15–19, 96 S.Ct. 2882, 2892–94, 49 L.Ed.2d 752 (1976); *see also United States v. Carlton,* —— U.S. ——, ——, 114 S.Ct. 2018, 2022, 129 L.Ed.2d 22 (1994); *National R.R. Passenger Corp. v. Atchison, T. & S.F. Ry. Co.,* 470 U.S. 451, 472, 105 S.Ct. 1441, 1455, 84 L.Ed.2d 432 (1985). Notwithstanding our usual deference to congressional enactments, we review economic legislation with particular scrutiny when a government attempts to redefine or abrogate its own contractual relationships. *See United States Trust Co. v. New Jersey,* 431 U.S. 1, 26, 29, 97 S.Ct. 1505, 1521, 52 L.Ed.2d 92 (1977) ("We can only sustain [such action if it were] both reasonable and necessary to serve . . . [an] important [State] purpose."); *Perry v. United States,* 294 U.S. 330, 350–51, 55 S.Ct. 432, 435, 79 L.Ed. 912 (1935); *Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); *see also Atchison,* 470 U.S. at 470–75 & nn. 24, 25, 105 S.Ct. at 1454–57 & nn. 24, 25.

■ Sheridan Square, believing the "thirty percent" statutory settlement to be arbitrary and capricious, contests the rationality of the statutory payment scheme. We are not convinced. "Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches." *Pension Benefit,* 467 U.S. at 729, 104 S.Ct. at 2717. Confronted with a large number of legal disputes between HUD and various Section 8 owners, Congress eliminated the cost and uncertainties of multiplicious legal battles by imposing a uniform and easily calculated solution. It may be that certain parties received less than might have been obtained from a successful lawsuit; others, undoubtedly, obtained more.[1] Under the circumstances, the congressional formula strikes us as eminently reasonable and fair;

---

1. We note that, given the decision reached in *Alpine Ridge,* it is far from certain than *any* of the

Section 8 owners would have won a relevant lawsuit against HUD.

Sheridan Square points to no evidence that suggests a contrary conclusion. We therefore hold that § 801(a)(1) does not violate procedural due process. *See Usery,* 428 U.S. at 19, 96 S.Ct. at 2894 ("It is enough to say that the Act approaches the problem of cost-spreading rationally; whether a broader cost-spreading scheme would have been wiser or more practical under the circumstances is not a question of constitutional dimension.").

█ We turn now to Sheridan Square's substantive due process claim. On appeal, Sheridan Square acknowledges that *Alpine Ridge* forecloses any claim of a property right in AAAF–based rent adjustments. Sheridan Square nonetheless contends, first, that its contract with HUD gives it a property right in receiving a subsidized rent that is not materially less than the market rent, and second, that the thirty percent settlement imposed by Congress would result in a rent payment or rent subsidy that is in fact materially less than the market rent. Sheridan Square therefore concludes that § 801(a)(1) unconstitutionally deprives it of property without due process of law.

█ This is hardly a frivolous argument. We need not address it today, however, because we conclude, as did the district court, that this claim was neither raised nor argued before the district court. *See* 844 F.Supp. at 649 n. 3. Sheridan Square's complaint, which was twice amended, neither bases a cause of action upon the property right now asserted nor even alleges the existence of such a right.[2] Sheridan Square likewise

failed to raise this substantive due process argument[3] in its response to the government's motion for summary judgment.[4] Sheridan Square now contends that the argument presented on appeal was "inherently raised" by the government's motion for summary judgment. *See* Aplt.'s Brief at 23 n. 4. We are not persuaded that a summary judgment motion which touched only upon procedural rights under the APA, the FOIA, and the Due Process Clause necessarily encompassed the substantive due process argument now made by Appellant.[5] In general, only those issues that are actually presented to the district court are preserved for appeal. *See Coffey v. Healthtrust, Inc.,* 955 F.2d 1388, 1393 (10th Cir.1992); *Hicks v. Gates Rubber Co.,* 928 F.2d 966, 970–71 (10th Cir. 1991). We cannot conclude that Sheridan Square warrants an exception from this general rule. *Compare Hicks,* 928 F.2d at 970.

█ Even assuming that the substantive due process claim was preserved in the district court, Sheridan Square has, in any event, failed to set forth (either before the district court or on appeal) specific facts suggesting that a deprivation of property in fact occurred. *See Kendall v. Watkins,* 998 F.2d 848, 850 (10th Cir.1993), *cert. denied sub nom.,* —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994); *Devery Implement Co. v. J.I. Case Co.,* 944 F.2d 724, 726–27 (10th Cir.1991). Sheridan Square bears the burden of proving § 801(a)(1) unconstitutional, *see Pension Benefit,* 467 U.S. at 729, 104 S.Ct. at 2717; the record, however, contains no evidence that the rent subsidy authorized

---

**2.** The complaint does, of course, claim a right to AAAF–based adjustments. Sheridan Square made no attempt to amend its complaint a third time after *Alpine Ridge* left this argument untenable.

**3.** As discussed above, Sheridan Square did set forth a procedural due process argument in its response to the motion for summary judgment. *See* Aplt.App., tab 14, at 33–38. We have addressed this procedural argument upon appeal. This procedural claim, however, does not subsume a *substantive* challenge to the remedial statutory framework.

**4.** Sheridan Square, at several points, intimated that it might make such an argument. The record plainly demonstrates, however, that it was

never in fact made. *See* Aplt.'s App., tab 14, at 29 ("*[It] is plausible* that Plaintiff may ... have a constitutionally protected property right to rental adjustment at least equal to the rent [ ] commanded by comparable unassisted units.") (emphasis added); *id.* at 31 n. 15 ("Plaintiff would not preclude a due process challenge based upon the right to have rents set in accordance with properly performed market studies of comparable settlements, Section 801 *could possibly face* a due process challenge....") (emphasis added).

**5.** There was no need for the government to address Appellant's substantive property rights. As noted above, Sheridan Square's complaint alleged a property right only in AAAF–based adjustments—an issue that *Alpine Ridge* had resolved.

by the statute would be materially less than the market rent to which Sheridan Square claims entitlement.[6] In the absence of a deprivation of property, there can be no due process violation. *See Atchison,* 470 U.S. at 472, 105 S.Ct. at 1455. Summary judgment was therefore properly entered for the government.

The judgment of the district court is AFFIRMED.

---

6. In fact, the complaint and the response to the motion for summary judgment, far from providing specific data to substantiate this claim, do not even conclusively allege that the statutory payment is not equivalent to a fair market rent.